JOHN R. McCOY and W. F. Bryan v. H. A. DAVIS and J. W. Bowen, Copartners as Davis & Bowen.

(164 N. W. 951.)

**Real estate — record owner — judgment against — unrecorded deed — void as judgment lawfully obtained — execution on such judgment — sale — certificate — purchaser — notice of deed.**

1. Under § 5594, Comp. Laws 1913, an unrecorded deed is void as against a judgment lawfully obtained against the person in whose name the title to real property appears of record. And the certificate of sale issued to a purchaser upon a sale legally held under an execution issued upon such judgment is valid as against an unrecorded deed, of which the judgment creditor and purchaser had no notice.

**Real estate — record owner — judgment against — lawfully obtained — sale under execution — certificate — valid as against unrecorded deed.**

2. Under the stipulated facts in this case, it is *held* that an unrecorded deed held by the plaintiffs is void as against a judgment lawfully obtained by the defendants against the then record owner of the premises involved, and the certificate of sale issued to them upon a sale under the execution issued upon the judgment.

**Statutes — constitutionality of — first raised on appeal — general rule.**

3. As a general rule the constitutionality of a statute cannot be first raised on appeal in a civil action.

**Constitutional question — court — must be properly before — action — necessarily involved in.**

4. A court will pass upon a constitutional question only when such question is properly before it and necessarily involved.

**Statutes — annulment — record — courts should not go outside of.**

5. Courts should not, of their own volition, go outside of the record and

---

NOTE.—The priority of liens of a judgment or of a prior unrecorded conveyance seems to be a matter of the wording of the local statute, as will be seen by an examination of the cases on the subject in note in 16 L.R.A. 668.

search for reasons for annulling a statute, nor should they conjure up theories to overturn and overthrow it.

Opinion filed October 20, 1917.

From a judgment of the District Court of Stark County, *Crawford,* J., plaintiff appeals.

Affirmed.

*H. C. Berry* and *J. P. Cain,* for appellants.

The judgment of a justice court properly transcribed to the district court records of the county becomes a lien upon the real estate owned by the judgment debtor, outside of his homestead. Comp. Laws 1913, § 8446; N. D. Rev. Codes 1905, § 7751; Comp. Laws 1913, § 8386.

A judgment acquired under any circumstances creates no lien as against realty previously conveyed, whether the deed be recorded or not. It only attaches to the interest of the judgment debtor. Wilcoxson v. Miller, 49 Cal. 193; Lytle v. Black, 107 Ga. 386, 33 S. E. 414; Bailey v. Bailey, 93 Ga. 768, 21 S. E. 77; Pierce v. Spear, 94 Ind. 127; Runyan v. McClellan, 24 Ind. 165; Bird v. Adams, 56 Iowa, 292, 9 N. W. 224; Smith v. Savage, 3 Kan. App. 556, 43 Pac. 847; Shaw v. Padley, 64 Mo. 519; Black v. Long, 60 Mo. 181; Trenton Bkg. Co. v. Duncan, 86 N. Y. 221; Schroeder v. Gurney, 73 N. Y. 430; Baker v. Woodward, 12 Or. 3, 6 Pac. 173; Coleman v. Bank of Hamburg, 2 Strobh. Eq. 285, 49 Am. Dec. 671; Stanhilber v. Graves, 97 Wis. 515, 73 N. W. 48.

*Murtha & Sturgeon,* for respondents.

When one obtains a deed to real estate it becomes his duty to at once have it recorded to protect his title. The appellants must be presumed to know the law. The respondents had no knowledge or notice of the deed. They acted innocently, lawfully, and in good faith. Rev. Codes 1905, § 5038, Comp. Laws 1913, §§ 5594 and 7705; Enderlin Invest. Co. v. Nordhagen, 18 N. D. 517, 123 N. W. 390, 21 N. D. 25, 129 N. W. 1024; Ildvedsen v. First State Bank, 24 N. D. 227, 139 N. W. 105; Mott v. Holbrook, 28 N. D. 251, 148 N. W. 1061.

A lien by attachment or execution levy upon lands is superior to an unrecorded deed, where the creditor acts in good faith and without notice. Enderlin Invest. Co. v. Nordhagen, 18 N. D. 517, 523, 123 N. W. 390, 21 N. D. 25, 129 N. W. 1024.

Property rights are not infringed by provisions made for the reasonable protection of purchasers of property, such as are afforded by registration laws. 8 Cyc. 891 (6)–908 (n); Citizens' State Bank v. Julian, 153 Ind. 655, 55 N. E. 1007; Van Husan v. Heames, 96 Mich. 504, 56 N. W. 22; Boston v. Cummins, 16 Ga. 102, 60 Am. Dec. 717.

The time for redemption cannot be extended except for good cause. Little v. Worner, 11 N. D. 382, 92 N. W. 456; Kenmare Hard Coal, Brick & Tile Co. v. Riley, 20 N. D. 182, 126 N. W. 241; Summerville v. Sorrenson, 23 N. D. 460, 42 L.R.A.(N.S.) 877, 136 N. W. 938; Nichols v. Tingstad, 10 N. D. 172, 86 N. W. 694; Gates v. Ege, 57 Minn. 465, 59 N. W. 495, 17 Cyc. 1324, D, 1329 (5), 1331; Keith v. Losier, 88 Iowa, 649, 55 N. W. 952; Tilley v. Bonney, 123 Cal. 118, 55 Pac. 798; Davidson v. Gaston, 16 Minn. 230, Gil. 202; Lynch v. Burt, 67 C. C. A. 305, 132 Fed. 417.

CHRISTIANSON, J. This is an action to set aside a certificate of sale issued by the sheriff of Stark county to the defendants for a tract of land purchased by them upon an execution sale. The case was submitted upon a stipulated statement of facts. The material facts are: On August 30, 1909, Robert O'Connor became the owner in fee of the premises involved herein by virtue of a patent issued to him on that day by the United States government. The patent was recorded in the office of the register of deeds on May 11, 1910, and the record title to the premises remained in said Robert O'Connor until November 5, 1915. The defendants obtained a judgment against said Robert O'Connor, which was duly docketed in the office of the clerk of the district court of Stark county on October 1, 1915. Execution was issued upon the judgment, and, on October 20, 1915, the sheriff duly levied upon the premises involved herein, and caused to be filed for record in the office of the register of deeds of said county, a notice of levy as provided by law. The sheriff advertised the premises for sale, and on November 29, 1915, sold the same to the defendants for the full amount due upon the judgment, including interest and costs. The levy, notice of sale, and sale were in all things made, given, and conducted according to law. The proper certificate of sale was issued to the defendants, and recorded in the office of the register of deeds of said county on November 30, 1915. No redemption was made. Robert O'Connor

was a single man. The land was vacant and wholly unoccupied at the time defendants commenced the action on which their judgment was obtained, and so remained until after the execution sale. On August 7, 1915, the said Robert O'Connor executed and delivered to the plaintiffs a warranty deed for said premises, but the deed was not recorded until November 5, 1915. And at the time of the levy under the execution, "the apparent title in and to said premises, as shown of record in the office of the register of deeds of said Stark county, was in said Robert O'Connor."

Upon these facts, as stipulated, the trial court made findings of fact in favor of the defendants sustaining the validity of the said certificate of execution sale, and the title based thereon. The plaintiffs appeal from the judgment and assail the correctness of the conclusions of law drawn by the trial court from the facts found.

Our statute provides: *"Every conveyance by deed, mortgage or otherwise, of real estate within this state, shall be recorded in the office of the register of deeds of the county where such real estate is situated, and every such conveyance not so recorded shall be void* as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance whether in the form of a warranty deed or deed of bargain and sale, deed of quit claim and release, of the form in common use or otherwise, is first duly recorded; or *as against* any attachment levied thereon *or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance."* Comp. Laws 1913, § 5594.

This statute clearly places judgments on par with deeds and mortgages. It makes every unrecorded conveyance "by deed, mortgage, or otherwise," void as against the lien of a judgment lawfully obtained and docketed against the record owner, by a judgment creditor who has no actual knowledge or notice of the unrecorded conveyance. And title based upon a sale legally held under an execution issued upon such judgment is valid as against an unrecorded deed of which the judgment creditor and purchaser had no notice. Not only do the plain words of the statute say so, but this court has several times declared that to be the meaning and effect of the statute. See Enderlin Invest. Co. v. Nordhagen, 18 N. D. 517, 123 N. W. 390; Nordhagen v. Enderlin

Invest. Co. 21 N. D. 25, 129 N. W. 1024; Ildvedsen v. First State Bank, 24 N. D. 227, 139 N. W. 105; Mott v. Holbrook, 28 N. D. 251, 148 N. W. 1061.

Plaintiff also contends that the statute is unconstitutional. This question was not raised in the court below, nor has appellant supported this contention to any extent by argument, or pointed out with any degree of particularity wherein it is claimed that the statute violates any provision of either the state or Federal Constitution. It is a general rule supported by the unanimous weight of authority, that the constitutionality of a statute cannot be first questioned on appeal in a civil action. 3 C. J. § 608, p. 710; 6 R. C. L. p. 95, § 96. It is equally well settled that he who declares a statute to be unconstitutional has the burden of showing that such constitutionality exists, and should point to the particular constitutional provision violated. State ex rel. Linde v. Taylor, 33 N. D. 76, 86, L.R.A.1918B, 156, 156 N. W. 561.

The question of constitutionality has, however, been raised by a dissenting member of this court. It is contended by such member: (1) That the statute was not passed in a constitutional manner; and (2) that it is in conflict with the 14th Amendment to the Constitution of the United States, for the reason that it deprives persons of property without due process of law.

While it is the duty of the judiciary, when required in the regular course of judicial proceedings, to declare void any act which violates the Constitution, it will not do to make of the courts "a sort of superior upper house to consider and pass, in general and particular as well, upon legislative enactments." Wadhams Oil Co. v. Tracy, 141 Wis. 150, 123 N. W. 785, 18 Ann. Cas. 779. The power to revoke or repeal a statute is not judicial in its character, and the courts ought not to pass on the question of constitutionality of a statute abstractly, but only as it applies and is sought to be enforced in the government of a particular case before the court. 6 R. C. L. p. 90. A statute is presumed to be constitutional. This presumption becomes conclusive unless it is clearly shown that the enactment is prohibited by the Constitution of the state or of the United States. State ex rel. Linde v. Taylor, supra.

The statute under consideration has been authenticated by, and has

received the approval of, two of the three great co-ordinate departments of the state government. It is well to remember that the responsibility of upholding the Constitution does not rest upon the courts alone; that the members of the legislature and the governor are required to take an oath to support the Constitution; and that the presumption is that they have obeyed this oath, and observed the constitutional requirements. 6 R. C. L. p. 101.

"*Courts will not assume to pass upon constitutional questions unless properly before them,* and the constitutionality of a statute will not be considered and determined by the courts as a hypothetical question. It is only when a decision on its validity is necessary to the determination of the cause that the same will be made, and not then at the instance of a stranger, but only on the complaint of those with the requisite interest. These principles have been recognized by the Supreme Court of the United States. That tribunal has announced that it rigidly adheres to the rule never to anticipate a question of constitutional law in advance of the necessity of deciding it, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, and never to consider the constitutionality of state legislation unless it is imperatively required." 6 R. C. L. pp. 76, 77.

We are aware of no instance where a court has, of its own volition, gone outside of the record to search for reasons for annulling a statute. On the contrary the courts have recognized it to be their primary duty to construe statutes with reference to the Constitution (Escambia County v. Pilot Comrs. 52 Fla. 197, 120 Am. St. Rep. 196, 42 So. 697); that the power to pass upon the constitutionality of laws, even when the question arises in the course of ordinary litigation, is one to be exercised with the greatest possible caution and wisdom (State ex rel. Bolens v. Frear, 148 Wis. 456, L.R.A.1915B, 569, 134 N. W. 673, 135 N. W. 164, Ann. Cas. 1913A, 1147); and that the courts should not conjure up theories to overturn and overthrow the solemn declarations of the legislative body. State ex rel. Shepard v. Superior Ct. 60 Wash. 370, 140 Am. St. Rep. 925, 111 Pac. 233, but should resolve every reasonable doubt in favor of their validity. (6 R. C. L. pp. 97, 98.)

While we do not deem the question of constitutionality before us,

we deem it proper to observe that the system of registration of conveyances has been in operation in this country from its earliest history. It was in general use in the colonies, and prevailed in New England from its earliest settlement. Webb, Record of Title, § 3. It may, indeed, be said that our whole system of land titles and conveyances has, during the entire period of our national existence, "rested upon the plan and policy of registration." Webb, Record of Title, § 3; 24 Am. & Eng. Enc. Law, 76. The constitutional power of a legislature to enact recording acts has seldom been questioned. Such power was expressly sustained by the Supreme Court of the United States in the case of Jackson ex dem. Hart v. Lamphire, 3 Pet. 280, 7 L. ed. 679, decided in 1830. In the opinion in that case the court said: "It is within the undoubted power of state legislatures to pass recording acts, by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time; and the power is the same whether the deed is dated before or after the passage of the recording act. Though the effect of such a law is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law impairing the obligation of contracts; such, too, is the power to pass acts of limitations, and their effect. Reasons of sound policy have led to the general adoption of laws of both descriptions, and their validity cannot be questioned. The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment." See also 6 Enc. U. S. Sup. Ct. Rep. 879; 10 Enc. U. S. Sup. Ct. Rep. 588. The validity of recording acts as applied to judgments is universally recognized. Webb, Record of Title, §§ 198, 199; Pom. Eq. Jur. § 724; Black, Judgm. § 446; 23 Cyc. 1385. Webb (Webb, Record of Title, § 199) says: "Where the lien of the judgment has attached and is held under the recording acts paramount to an unregistered conveyance, a purchaser at a sale under the judgment will not be affected with notice, unless the judgment creditor had received notice before his lien attached. The purchaser holds the land free from all such claims not of record, on the ground that when a right has once been vested and made absolute, it cannot be devested or defeated by any mere notice. The policy of

the recording acts requires this rule, as without it, the protection they afford could be taken away, and the lien devested by the subsequent acts of the party having an adverse claim by virtue of an unregistered conveyance." Professor Pomeroy states the rule in substantially the same language. See 2 Pom. Eq. Jur. § 724.

Plaintiffs have filed a motion wherein we are asked to allow them to file an amended complaint, and to permit them to introduce certain evidence, and to remand the cause for the taking of such evidence. The motion is based solely upon the affidavit of one of plaintiffs' attorneys to the effect that plaintiffs' attorney, after the levy of the execution and prior to the sale of the premises, applied to the district judge for an order restraining the defendants and the sheriff from making sale under the execution, and at that time was informed by the judge that they had better permit the land to be sold and bring an action to set aside the sale. It is further averred that the trial judge, at the time the cause was submitted, informed plaintiffs' attorneys that, in event he sustained the execution sale, he would later permit them to file briefs on the question of the right to redeem. The affidavit further avers that, in the event the cause is reopened, plaintiffs will offer evidence to show: (1) That the land at the time of the sale was worth not less than $15 per acre; (2) that the plaintiffs purchased the same from said Robert Connor for a good, sufficient, and valuable consideration; and (3) that as a part of the purchase price plaintiffs executed and delivered to said Connor a mortgage, which it is averred was recorded in the office of the register of deeds of Stark county, on September 8, 1915, and constituted notice of the fact that Robert Connor had conveyed his interest in the land to the defendants prior to the docketing of the judgment.

The record shows that this action was commenced in 1916, and that defendants' answer was served on June 5, 1916. The stipulation of facts was signed on January 17, 1917. Judgment was entered and notice of entry served on March 7, 1917. No application was made to the trial court to reopen the case, in order to enable plaintiffs to introduce further evidence, and the affidavit submitted in support of the motion shows no reason whatever for the failure to make an appropriate application in the district court.

The motion papers do not indicate in what particular it is desired to

amend the complaint. Nor is there any contention that the proposed evidence was not known to the plaintiffs and to their attorney before the cause was submitted in the court below. Counter affidavits submitted by the defendants contradict plaintiffs' affidavit in most particulars.

In a proper case this court might possibly have authority to order a pleading amended to conform to the proof. And this court might probably remand a cause so as to enable a party to make certain motions in the court below, but we are aware of no rule under which an appellate court can, in the first instance, properly entertain a motion to file an amended pleading or to reopen a cause for the introduction of evidence. Motions of this kind should be made in the trial, and not in the appellate, court.

Nor is it apparent that the introduction of the proposed evidence would in any manner change the result. The recording acts apply to all conveyances; and the fact that the deed from Connor to the plaintiffs was supported by a valuable consideration would in no manner affect the result. It is undisputed that the plaintiffs knew of the proceedings under which defendants claimed title, even before a sale was made under the execution, and the sale was regularly held and in every respect conducted in the manner provided by law. There is no contention that there was any fraud. Under these circumstances a court cannot permit a redemption after the statutory period has expired. In this connection it may also be stated that the counter affidavits served by defendants preponderate on the question of the value of the land, and show the land to be worth only about $1,800, and that the amount of the outstanding encumbrances and taxes prior to the judgment under which defendants purchased, together with the amount of such judgment, amount to approximately the value of the land. It should be remembered that there is no contention that the defendants in this case had actual knowledge of the record of the mortgage from plaintiffs to Connor. On the contrary it is stipulated as an absolute fact that they had no actual knowledge or notice whatever. There is no contention that the stipulation of facts was erroneous, nor is any desire expressed to be relieved from the stipulation. The sole contention is that the mere record of the mortgage constituted sufficient notice to charge the defendants with knowledge of plaintiffs' interest in the land.

The rule supported by the weight of authority is that "a record gives constructive notice only to persons in the same line of title, or, in other words, only to persons who must trace their title back through the same grantor." 24 Am. & Eng. Enc. Law, 2d ed. 148. South Carolina has refused to apply this rule to a purchase-money mortgage from the grantee in an unrecorded mortgage. It has been said in an eminent legal work that the South Carolina court "went astray on this point," and that it so held "apparently without due consideration." See 24 Am. & Eng. Enc. Law, 2d ed. 149, 150, and note 2.

The overwhelming weight of authority is to the effect that "where land is conveyed by a deed which is not recorded, and the grantee gives a purchase-money mortgage back to the grantor, which is duly recorded, the record of such mortgage will not operate as constructive notice to a subsequent purchaser of the land from the grantor in the unrecorded deed." 24 Am. & Eng. Enc. Law, 2d ed. 149.

The supreme courts of South Dakota and Wyoming have held that record of an instrument out of the chain of title constitutes constructive notice. See Fullerton Lumber Co. v. Tinker, 22 S. D. 427, 118 N. W. 700, 18 Ann. Cas. 11; Balch v. Arnold, 9 Wyo. 17, 59 Pac. 434. These decisions are based on the ground that the reason for the rule does not exist when the law requires the register of deeds to keep a numerical index of deeds, mortgages, or other instruments of record in his office, affecting or relating to the title to real property.

The system of numerical indexes was introduced during territorial days, and has been in operation in this state during the entire period of statehood. With such system in full operation this court, in Doran v. Dazey, 5 N. D. 167, 169, 57 Am. St. Rep. 550, 64 N. W. 1023, held that "the mere recording of an instrument out of the chain of the title will not, of itself, constitute constructive notice of such instrument, so as to bind one who deals with the apparent owner of the land according to the record, in ignorance of the existence of such instrument." Doran v. Dazey, supra, was decided October 30, 1895. In 1899 the legislature adopted the rule announced in Doran v. Dazey, supra, and made the same part of the statutory law of this state. Laws 1899, chap. 167.

The statute then enacted has remained in force ever since. It reads: "An unrecorded instrument is valid as between the parties thereto and

those who have notice thereof; *but knowledge of the record of an instrument out of the chain of title does not constitute such notice."* Comp. Laws 1913, § 5598. The first clause of this statute had been in force since territorial days. See § 3297, Comp. Laws 1887. The second clause (which we have italicized) was added by the legislature in 1899. This legislative declaration is clearly at variance with and establishes a rule in this state contrary to that announced by the supreme courts of South Dakota and Wyoming.

It follows from what has been said above that the motion must be denied, and the judgment affirmed.

It is so ordered.

ROBINSON, J. (dissenting). In August, 1915, Robert O'Connor owned a quarter section of land which he conveyed to the plaintiffs, taking a purchase-money mortgage for $1,710, recorded September 8, 1915. The deed was not recorded until November 5th. As the mortgage was to the owner of the title, it was in the chain of title, and it was constructive notice to purchasers. It showed clearly that O'Connor had transferred title and taken back a mortgage. Subsequently a justice's court judgment was docketed against O'Connor, and the land was sold on execution. Then in January this action was commenced to set aside the sale. If the action was prosecuted with efficiency and in good faith, the record fails to show it. It does not show the value of the land or any controlling equities which should appeal to the court, to prevent one man from stealing the land of another. It does not show any evidence, only a stipulation altogether in favor of the defendants. It is stipulated that they knew nothing of the plaintiffs' title when the recorded mortgage was ample notice to them.

Defendants base their claim of title on Laws of 1903, chap. 152, "An Act Amending §§ 3504 and 3505 of the Revised Codes Relating to the Recording of Conveyances and the Effect Thereof." The amendment is an addition, to the effect that every conveyance of land not recorded shall be void against an attachment levied thereon or a judgment obtained at the suit of any party against the person in whose name the title to such land appears of record. The amendment is void for several reasons:

1. It was not passed by the legislative assembly. The act was Senate Bill 205.

On March 5, 1903, it was passed ·by the senate.    On March 4, 1903, the bill was read in the house and referred to the "Steering committee." On March 4th, at the close of the day, the bill was put upon final passage, and it was lost.    The vote against it was, ayes, 23 ; nays, 54. Davis gave notice of a motion to reconsider.    House journal, 809. The motion to reconsider was never made, but on March 6th, the last day of the session, without any motion to reconsider, the lost bill was taken up and passed.    That is as the records show it, and after the passage the title was amended by adding thereto the words, "relating to the recording of conveyances and the effect thereof."    House Journal 914–915.    That was on March 6, 1903, the last day of the session; but as the senate journal shows, on March 6, 1903, the bill with the title as amended was reported back to the senate (Journal, 612).    On March 6th, late in the day, without a record vote, it is written the senate concurred in the amendment.    Then, on the passage of the bill as amended, there were, ayes, 34; nays, none.    And thus during the last two or three days of the session this bill without a title was rushed through both houses.

Section 61 of the Constitution is mandatory.    Under it every bill for an act must embrace only one subject, which must be expressed in its title.    The title of an act must go with it from the beginning to the end, so as to give notice ·to the lawmakers . and the people, of the subject and purpose of the act.    The title may not be formulated after the passage of the act; and when a bill has been voted on and lost it may not be again submitted for passage without a prevailing motion to reconsider it.    *Hence, the act in question was never passed, and it is not a law.*

2.  The act is in conflict with the 14th Amendment, that no state shall deprive any person of property without due process of law.    The amendment declares every conveyance of land to be void as against · an attachment levied thereon or a judgment at the suit of any party against the person in whose name the title to the land appears of record prior to the record of such conveyances.    Under such a statute no person could safely take title to land unless he stood in the office of the register of deeds and filed his conveyance immediately.    A party paying $10,000 cash for a tract of land, and filing his deed in two minutes, might find that a judgment for $10,000 had just been docketed against

his grantor.   Thus, by paying to docket a judgment, a purchaser in good faith, nowise in fault, might be deprived of his land.   A person may put a dollar in the slot with a positive assurance of gaining several thousand at the expense of some innocent purchaser.   *That is no due process of law.*   Under our statute on transfers a grant of land vests in the grantee the title without any recording of the conveyance, and a vested title to land may not be set aside in a twinkling by merely filing a paper claim against it.   When a claimant pays merely the expense of filing a claim he pays no consideration for the land.   He is not a bona fide purchaser, and the law cannot make him such.

Counsel for plaintiff has not presented these points in his brief, but that does not relieve this court of responsibility.  Every lawyer has a certificate from the court that he is competent and may safely be trusted to conduct the trial of a case.   Suitors have a right to rely on such certificate.   Hence, it is the duty of this court to protect them against errors of their lawyers.