[File No. 6486.]

FEDERAL LAND BANK OF ST. PAUL, a Body Corporate, Appellant, v. CARL J. JOHNSON, as County Treasurer, LaMoure County, North Dakota, and the State of North Dakota, Doing Business as Hail Insurance Department, Respondents.

(274 N. W. 668.)

Opinion filed August 20, 1937.

*John Thorpe* and *George F. Shafer,* for appellant.

*P. O. Sathre,* Attorney General, *Chas. A. Verret,* Assistant Attorney General, and *A. G. Porter,* State's Attorney, for respondent.

CHRISTIANSON, Ch. J.    The plaintiff brought this proceeding in mandamus to compel the county treasurer of LaMoure county to accept payment of the general taxes for 1935 against a tract of land in LaMoure county belonging to the plaintiff and to issue to it the usual official tax receipt.   The state of North Dakota, doing business as the State Hail Insurance Department, was joined as a party defendant. The defendants interposed a general demurrer to the petition.   The demurrer was sustained and the plaintiff has appealed.

In the petition it is alleged that the plaintiff now is, and since March 21, 1928, has been, the owner of a certain 160 acre tract of land in LaMoure county; that on May 15, 1928, it entered into a contract in writing with one Gohner whereby it agreed to sell and convey said land to Gohner upon the payment by him of $2,400.00 in certain annual installments; that by the terms of the contract Gohner agreed to pay all taxes assessed against the premises commencing with the year 1925; that Gohner made default in the payment of the installments and that on February 1, 1936, the plaintiff caused the contract

to be cancelled; that the contract had not, and has not, been recorded in the office of the register of deeds of LaMoure county; that the purchaser, Gohner, failed to pay the general taxes against the land for the year 1935, amounting in all to $34.01, and that such taxes have become delinquent; that the defendant, state of North Dakota, doing business as the State Hail Insurance Department, is the beneficial owner of the hail indemnity tax levied against the real property for the year 1935 which said hail indemnity tax has not been paid; that the plaintiff made application in writing to the defendant county treasurer of LaMoure county for permission to pay said general taxes without the inclusion of the hail indemnity taxes; that the plaintiff duly tendered to the said defendant county treasurer the full amount of the said 1935 general taxes but that said tender was rejected and that the plaintiff thereupon deposited the sum so tendered in payment of the said general taxes in the Bank of North Dakota to the credit of the said defendant county treasurer and served written notice of such deposit upon the said defendant county treasurer. It is further alleged upon information and belief that the defendant county treasurer refused to accept payment of the said 1935 general taxes for the reason that said offer was not accompanied by an offer to pay the hail indemnity taxes; that said refusal was due to the following provision contained in § 10, chapter 137, Laws 1933: "It is further provided that contracts for sale of lands and mortgages executed prior to the approval of this Act must be recorded within ninety days of the effective date of this Act in order to preserve their status as a prior lien to the hail indemnity taxes levied hereunder."

It is further alleged by the plaintiff that the above quoted statutory provision is violative of certain provisions of the constitution of the state of North Dakota and the constitution of the United States and, hence, is null and void.

It is further alleged that the plaintiff has no other plain, speedy and adequate remedy at law, and that unless a writ of mandamus is issued compelling the defendant county treasurer to accept payment of the general taxes for the year 1935 without payment of the said hail indemnity taxes and further compelling the said defendant county treasurer to issue an official receipt for such payment that said county

treasurer will continue to refuse to accept such payment and to issue such receipt.

Arguments have been presented on the question of the constitutionality of the above quoted statutory provision; but as we view the case it is the duty of the county treasurer to accept payment of the general taxes and to issue an official receipt for such payment without regard to whether the hail indemnity taxes are or are not paid and this duty exists wholly without regard to whether the above quoted statutory provision is valid or invalid. This being so, the constitutional questions raised on the argument are not properly here for determination.

"A constitutional question does not arise merely because it is raised and a decision thereon sought. A party who assails the validity of a statute on constitutional grounds must show that he is prejudiced by the alleged unconstitutional provision, and that a decision on the constitutional question is necessary in order to protect him in the enjoyment of the rights guaranteed to him by the Constitution. 'Courts will not assume to pass upon constitutional questions unless properly before them, and the constitutionality of a statute will not be considered and determined by the courts as a hypothetical question. It is only when a decision on its validity is necessary to the determination of the cause that the same will be made, and not then at the instance of a stranger, but only on the complaint of those with the requisite interest. These principles have been recognized by the Supreme Court of the United States. That tribunal has announced that it rigidly adheres to the rule never to anticipate a question of constitutional law in advance of the necessity of deciding it, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, and never to consider the constitutionality of state legislation unless it is imperatively required'." Olson v. Ross, 39 N. D. 372, 382, 167 N. W. 385, 386.

It seems clear that the provision in § 10 of said chapter 137 upon which the defendant county treasurer predicates his refusal to accept payment of the 1935 general taxes has no bearing whatever on the question whether the payment of one tax may be accepted without the payment of the other. The provision does not purport to change any existing rule or to prescribe any rule upon that subject at all.

It merely purports to deal with the question of priority, as between a hail indemnity tax lien and the liens of mortgages and contracts for the sale of lands. But the fact that the county treasurer has assigned an untenable ground for his refusal is not of controlling importance. A public officer may not be compelled by mandamus to perform an act merely because he predicates his refusal to perform it upon a ground that has no substance. The writ of mandamus may be issued by the district court to any inferior tribunal, person, board or corporation only "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." Comp. Laws 1913, § 8457. It will issue only to compel the performance of a plain legal duty. 38 C. J. 600; Strauss v. Costello, 29 N. D. 215, 150 N. W. 874; S. Birch & Sons Constr. Co. v. Fargo, 39 N. D. 370, 167 N. W. 390; Mandan News v. Henke, 48 N. D. 402, 184 N. W. 991.

The ultimate question presented is whether it is the plain legal duty of the county treasurer to accept payment of general land taxes even though there are outstanding hail indemnity taxes against the same tract of land.

Ordinarily a taxpayer "has the right to pay the amount of any one tax listed against him while refusing or omitting to pay others." 61 C. J. 966.

The laws of this state provide: "Taxes upon real property are hereby made a perpetual paramount lien thereon against all persons and bodies corporate except the United States and the state." Comp. Laws 1913, § 2186.

This court has held that the general tax against realty may be paid without paying an assessment for special improvements (State ex rel. Moore v. Furstenau, 20 N. D. 540, 129 N. W. 81), or a drain tax (Hackney v. Elliott, 23 N. D. 373, 137 N. W. 433). This court has held, also, that the general tax may be paid without paying the hail indemnity tax. State v. Johnson, 54 N. D. 184, 208 N. W. 966.

It is true that subsequent to the decision in State v. Johnson, supra, certain changes have been made in the laws as regards the collection of hail indemnity taxes and the lien thereof; but these changes do not, in our opinion, evidence a legislative intention to change the rule that

general taxes on real property may not be paid unless a hail indemnity tax against the property is paid at the same time.

The statutory provisions applicable to the hail indemnity taxes in question here are embodied in chapter 137, Laws 1933. It is there provided:

"Such hail indemnity tax shall be a general tax against the whole of said tract, parcel, or subdivision of land in like manner and to the same effect as general state and county taxes. It shall be of the same order and the lien therefor shall share rateably with other general tax liens in all tax proceedings and tax sales, and it shall be subject to all the provisions of law relating to general taxes except as hereinafter provided. The lien of the tax herein provided for shall be prior and superior to all mortgages, liens and judgments executed subsequent to the approval of this Act. Such tax shall become due and payable at the same time as other general taxes and delinquent at the same time as the first installment of other general taxes except that said tax shall be paid as a whole and not in installments." § 3.

"Hail indemnity taxes may be paid separately without payment of other general taxes so as to allow owners or croppers to secure State Hail Insurance protection on crops grown on lands on which hail indemnity taxes are unpaid at the time protection is applied for. When any land is advertised and sold for nonpayment of taxes, the hail indemnity taxes, which constitute a prior lien as provided for in this Act, shall be advertised and sold together with the general taxes and all laws relating to the collecting of penalty and interest and sale of realty for nonpayment of taxes shall apply to such hail indemnity taxes. Provided, that hail indemnity taxes not constituting prior liens shall not be advertised or sold but such hail indemnity taxes shall remain on the county records as a lien against the land until paid or until cancelled as provided for in Section 29 of this Act. Provided, further, that in case the lien prior to the lien of the hail indemnity tax is extinguished or satisfied by any process other than the foreclosure of the lien prior to the hail indemnity tax lien, such hail indemnity tax shall be sold at the next real estate tax sale and all laws relating to sale of realty for nonpayment of taxes shall apply to such hail indemnity taxes." § 7.

It will be noted these statutory provisions nowhere in so many words declare that the general tax against land may not be paid unless the hail indemnity tax is also paid at the same time.

In Federal Farm Mortg. Corp. v. Falk, ante, 341, 270 N. W. 885, — A.L.R. —, this court had occasion to consider the characteristics and status of the hail indemnity tax under the legislative enactment of 1933. In the decision in that case we said:

"We are agreed that the hail indemnity tax imposed under the legislative enactment of 1933 cannot be sustained either as a general tax or as a special assessment for benefits to the real property. It is not a tax within the legal purview of that term and cannot be sustained as such." . . .

"It is true the statute speaks of the hail indemnity tax as a 'tax;' but notwithstanding the fact that the Legislature used the term 'tax,' the provisions of the 1933 enactment show that the lawmakers realized that the hail indemnity tax was not a 'tax.' If it were a tax, it would, of course, take priority over all liens without regard to when they came into existence. But, as was pointed out by this court in Davis v. McLean County, supra, and State v. Johnson, supra, the hail indemnity tax is not a tax. It does not come into being as a result of the exercise of the power of taxation for the support of the government. In each instance it owes its existence to the consent of an individual or individuals. As regards each tract of land, it lies within the power of an individual or individuals to cause the hail indemnity tax to be levied or not to be levied. The hail indemnity tax is in reality a premium for hail insurance protection furnished by the state hail insurance department, and the right to receive payment of the tax is predicated upon the contractual relations between the parties and not upon the taxing power of the state." 270 N. W. 885–889.

While chapter 137, Laws 1933, provides that the lien of a hail indemnity tax "shall share rateably with other general tax liens in all tax proceedings and tax sales" the "provisions of the 1933 enactment show that the lawmakers realized that the hail indemnity tax was not a 'tax' " (270 N. W. 885). The hail indemnity tax is imposed under a different power and is in no sense a part of the general tax, and the lien for the general tax and the lien for the hail indemnity tax are

separate and distinct liens even though both may be enforced by sale of the land at the same time for the amount of both liens and only one certificate of sale be issued.

Under the law existing when chapter 137, Laws 1933, was enacted general land taxes might be paid without payment of hail indemnity taxes. State v. Johnson, 54 N. D. 184, 208 N. W. 966, supra. In said chapter 137 the legislature provided that hail indemnity taxes might be paid separately without payment of general land taxes. Laws 1933, chap. 137, § 7. It also provided that the hail indemnity tax should not be paid in installments but that the whole tax must be paid at one time. Laws 1933, chap. 137, § 3. The same legislative assembly provided on the other hand that all general real estate taxes, either current or delinquent, may, at the option of the taxpayer, be paid in installments. Laws 1933, chap. 259.

It will be noted that the legislative assembly which enacted chapter 137, Laws 1933, sought to encourage and facilitate the payment of general taxes. The proceedings of that assembly bear ample testimony as to the concern on the part of the lawmakers on account of the dwindling tax collections and their desire to encourage the payment of general taxes. It would indeed have been strange if that assembly had taken any action that would tend to render it more difficult for a person to pay his general taxes. This would have been contrary to the policy enunciated in its various enactments, and certainly no such intention should be assumed in the absence of a clear and unequivocal expression to that effect. And it is obvious that if a person is inhibited from paying his general tax either in whole or in installments, unless at the same time or prior thereto he also pays a hail indemnity tax, that in some and probably many instances it may be impossible for him to pay his taxes at all as the amount of the hail indemnity tax may be so large that he cannot pay it while he might be able to pay his general tax alone. In the very nature of things payment of the general taxes could in no case operate to the injury of the lien of the hail indemnity tax. On the contrary, payment of the general taxes would in every case improve the standing of the lien of the hail indemnity tax and tend to facilitate and encourage ultimate payment thereof.

·The laws of this state give to a taxpayer the right to pay either the general taxes or the hail indemnity tax without regard to whether he also at the same time pays the other. In short, they give to the taxpayer the right to pay either tax if or when he has sufficient funds so to do and they do not penalize a taxpayer who does not have sufficient moneys to pay the hail indemnity tax.

The judgment appealed from is reversed and the cause is remanded with directions that a writ of mandamus issue commanding the county treasurer of LaMoure county to accept payment of the general taxes tendered by the petitioner and to issue to the petitioner a general receipt therefor.

BURR, NUESSLE, and MORRIS, JJ., and GRIMSON, Dist. J., concur.

Mr. Justice BURKE did not participate, Hon. G. GRIMSON, Judge of Second Judicial District, sitting in his stead.