[File No. 6579.]

STATE OF NORTH DAKOTA, upon the Relation of W. H. STUTS-MAN, for Himself and All Other Taxpayers and Electors of the State of North Dakota Similarly Situated, Respondent, v. ROY D. LIGHT, as County Auditor of the County of Oliver, and Ben C. Larkin, Elmer W. Cart and S. S. McDonald, the Members of the Board of Railroad Commissioners of the State of North Dakota, Individually,

and

ROY D. LIGHT, as County Auditor of the County of Oliver, Appellant.

(281 N. W. 777.)

514: 

Opinion filed October 20, 1938.

*B. F. Tillotson,* Assistant Attorney General, and *Burton S. Wilcox,* State's Attorney, for appellant.

*James M. Hanley, Jr.,* for respondent.

*John F. Sullivan* and *Horace C. Young,* amici curiæ.

516

MORRIS, J. At the primary election in June 1938, an initiated measure proposing an amendment to § 82 of the Constitution of the State of North Dakota was submitted to the people and received a majority of the votes cast thereon. The proposed amendment reads as follows:

"There shall be chosen by the qualified electors of the State at the times and places of choosing members of the legislative assembly, a secretary, auditor, treasurer, superintendent of public instruction, commissioner of insurance, three commissioners of railroads, an attorney general, a commissioner of agriculture and labor, and a tax commissioner, who shall have attained the age of twenty-five years and shall have the qualifications of state electors. They shall severally hold their offices at the seat of government for the term of two years and until their successors are elected and duly qualified; but no person shall be eligible for the office of treasurer for more than two consecutive terms; provided, however, the tax commissioner shall hold his office for the term of four years and until his successor is elected and duly qualified.

"The tax commissioner shall be elected on a no-party ballot and he shall be nominated and elected in the manner now provided for the nomination and election of the superintendent of public instruction.

"The first election of a Tax Commissioner shall not occur until the year 1940."

Section 32, before its amendment, provided, with reference to members of the Board of Railroad Commissioners, that "one commissioner of railroads shall be elected every two years, and shall hold his office for a term of six years and until his successor is elected and qualified." It contained no provisions regarding the election of a Tax Commissioner.

The respondent, Light, is the auditor of the county of Oliver, and as such, it is his duty to prepare the ballots to be used in that county at the coming general election. The relator sought and obtained an injunctional order against the county auditor which provides as follows:

"Now therefore ordered that the above named respondent, Roy D. Light, as County Auditor of the County of Oliver in the State of North Dakota, be and he is hereby permanently restrained and enjoined from printing and from so arranging the official ballot for the general election to be held on November 8, 1938, so as to permit the electors to vote for more than one candidate for the office of Railroad Commissioner of North Dakota, and from printing upon said ballot below the designation, 'Commissioners of Railroads' the direction, 'vote for three names only.' "

From this order the county auditor appeals to this court. His position is that the proposed constitutional amendment having received a majority of the votes cast thereon became effective on the 30th day after the election as provided by § 25 of the Constitution, and is, therefore, now in effect, and that according to the terms of the amendment three Railroad Commissioners are required to be elected "at the times and places of choosing members of the legislative assembly," which termintes existing terms, thus bringing about the election of three Railroad Commissioners at the coming general election and necessitates the preparation of the ballots in the form which he proposes.

The relator contends that the county auditor should be restrained from having the ballots prepared in the form proposed upon two general grounds, namely, that the amendment in question is wholly prospective in its operation in the sense that it does not affect the terms of the present incumbents. He also contends that in any event the amendment was never legally adopted so as to become a part of the Constitution.

The ultimate question before us is as to the form of the ballot with respect to the office of Commissioner of Railroads. This is the sole issue between the relator and the county auditor. In order to determine this question we must look first to the amendment itself, construe its terms, and apply them to the controversy.

Constitutional amendments, like statutes, will not be considered retrospective in their operation unless their terms clearly disclose such an intention. 11 Am. Jur. Constitutional Law, § 35; Shreveport v. Cole, 129 U. S. 36, 32 L. ed. 589, 9 S. Ct. 210; Hopkins v. Anderson, 218 Cal. 62, 21 P. (2d) 560. The mere statement of the rule of prospective operation does not entirely solve the problem for it is argued that the termination of the terms of all three members of the Board of Railroad Commissioners is consistent with the rule of prospective operation. In order to determine the manner in which the amendment operates prospectively, we must ascertain as nearly as possible the intention of those who enacted the amendment, who, in this case, are the approving voters. We are aided in determining this intention by similar situations that have been presented to other courts and by the rules which they applied in determining the intention with which certain enactments were adopted.

An incumbent of a public office has no property right therein. If the office is created by the legislature that body may, in the absence of any constitutional restriction, abolish the office entirely. State ex rel. Topping v. Houston, 94 Neb. 445, 143 N. W. 796, 50 L.R.A. (N.S.) 227. The legislature may shorten the term of such an office after the election or appointment of the incumbent. O'Laughlin v. Carlson, 30 N. D. 213, 152 N. W. 675; Mechem, Pub. Off. § 389. However, the intention to so change the term of an office must be clearly expressed. 46 C. J. 957.

The same reasoning applies to changes in the terms of public offices affected by amendments to the Constitution that applies to such changes when made by statutory amendment. The rules pertaining to prospective operation and clearly expressed intention apply in the one instance equally as well as in the other.

In Farrel v. Pingree, 5 Utah, 443, 16 P. 843, the Supreme Court of Utah considered the effect upon the term of an incumbent of the amend-

ment of the statute fixing the terms of county treasurers by striking out the word "four" before the word "years" and substituting the word "two" in lieu thereof. The amendment became effective less than two years subsequent to the election of the incumbent who had been elected under the four year provision. The court held that to interpret the amendment so as to terminate the incumbent's term at the end of two years would be to give it a retroactive construction, and said, "No court will hold a statute to be retroactive when the legislature has not said so, and there is no reason why it should be so, and where the statute is easily susceptible of another and reasonable construction. . . . No reference was made to the cases of persons then in office. The statute was wholly prospective, and related to terms of office in the future."

Among others, the court cited the case of People ex rel. McMinn v. Haskell, 5 Cal. 357. Dealing with an amendment changing the time of election of the Clerk of the Superior Court of the city of San Francisco and changing the term of office from two years to one year, it was held that although the election might be held prior to the expiration of the term of the incumbent who had been elected under the two year provision, the candidate so elected was not entitled to the office until the expiration of two years from the date of the incumbent's election. In State ex rel. Pendleton v. Superior Ct. 119 Wash. 73, 204 P. 1053, it is stated that "the rule is that statutes will not be construed to shorten the terms of incumbent officers unless the intent is plainly and clearly expressed."

In Swanson v. State, 132 Neb. 82, 271 N. W. 264, it became necessary to construe a constitutional amendment which deleted the words "Commissioner of Public Lands and Buildings" from the section of the Constitution of that state which enumerated the constitutional officers. In discussing the effect of the amendment, it is said, "The question immediately arises whether the office of commissioner of public lands and buildings was completely abolished by the constitutional amendment. It will be noted that the amendment contains no specific words purporting to abolish the office. We fail to find any language from which such an intent can be implied. The removal of the name of 'commissioner of public lands and buildings' from the list of con-

stitutional executive officers of the state certainly cannot of itself amount to an abolition of the office unless reasonable intendments of that nature can reasonably be drawn from what was done. . . . We must presume that the people, in amending the Constitution, had in mind the fact that many existing statutes were in force placing duties and obligations upon the commissioner of public lands and buildings. In view of the fact that the amendment contained no language from which an intent can be drawn to abolish the office in its entirety or to repeal existing statutory law pertaining to the office, which said statutory law standing alone is sufficient to create the office of commissioner of public lands and buildings, we must necessarily conclude that the office is still existent as an executive office of the state with the duty imposed of performing all functions required of him by the statutes of this state."

In seeking the intention of the amendment that is before us in so far as it applies to the terms of Commissioners of Railroads, considerable weight must be given to the fact that at the election at which the amendment was approved, nominations were made for various state offices but only one nomination was made for the office of Commissioner of Railroads. It cannot be reasonably assumed that those who voted for the amendment did so with the intention that it would terminate all existing terms and would bring about the election of three Commissioners of Railroads at the November 1938 election, while those same voters voted for but one nomination to fill but one office of Commissioner of Railroads. To hold that the approving voter intended that the amendment should terminate existing terms would be to attribute to him an intention to bring about the election of two officers for whom no opportunity had been given to the people to choose nominees under the primary election laws. No such an intention can be reasonably read into the amendment. It was intended to be prospective in its operation so as to bring about the election of Commissioners of Railroads for terms of two years upon the expiration of the terms of present incumbents. Since the amendment does not affect the terms of the present incumbents, only one Commissioner of Railroads will be elected at the coming general election, and the ballots should be prepared accordingly.

The contention of the relator that the amendment was never legally adopted cannot be considered in the present case. This is a constitutional question. We have already determined the issue in the case, namely, the form of the ballot to be prepared by the County Auditor. A court will not assume to pass upon a constitutional question unless the question is properly before it and this does not occur unless the constitutional question must be decided in order to determine the controversy before the court. McCoy v. Davis, 38 N. D. 328, 164 N. W. 951; Olson v. Ross, 39 N. D. 372, 167 N. W. 385; Murie v. Cavalier County, ante, 242, 278 N. W. 243; State ex rel. Kaufman v. Davis, 59 N. D. 191, 229 N. W. 105; Federal Land Bank v. Johnson, 67 N. D. 534, 274 N. W. 668. Under the circumstances here presented it is the duty of the court to refrain from passing upon constitutional questions. Reeves & Co. v. Russell, 28 N. D. 265, 148 N. W. 654, L.R.A. 1915D, 1149. An opinion as to the validity of the amendment in this case would be purely advisory. This court may not give advisory opinions. The rule which we have here enunciated has not only long prevailed in this state, but it is the rule generally followed by the courts throughout the country. The Supreme Court of the United States in Baker v. Grice, 169 U. S. 284, 42 L. ed. 748, 18 S. Ct. 323, said, "It is matter of common occurrence—indeed it is almost the undeviating rule of the courts, both state and Federal—not to decide constitutional questions until the necessity for such decision arises in the record before the court. This court has followed that practice from the foundation of the government, . . ."

Affirmed.

CHRISTIANSON, Ch. J., and NUESSLE and SATHRE, JJ., and GRIMSON, Dist. J., concur.