L. R. BAIRD, as Receiver of Granville State Bank, Granville, North
Dakota, a Corporation, Respondent, v. EDITH A. STUBBINS,
Appellant.

(65 A.L.R. 1009, 226 N. W. 529.)

Opinion filed July 26, 1929.

*Bagley & Johnson,* for appellant.

*Dickinson & Johnson,* for respondent.

CHRISTIANSON, J. The sole question involved in this case is whether the title of the defendant under certain unrecorded tax deeds was cut off by a sheriff's deed issued to the plaintiff pursuant to a sale upon an execution against the record owner of the land. The material

facts are not in dispute. They are as follows: On March 20th, 1926, the plaintiff obtained a judgment against the Stubbins Land & Loan Company. Thereafter execution was issued upon the judgment and on November 13th, 1926, certain lands in McHenry county, the title to which then appeared of record in the name of said Stubbins Land & Loan Company, were sold to the plaintiff at execution sale, and sheriff's certificate of sale was duly issued to him. There was no redemption, and on April 6th, 1928, a sheriff's deed was issued to the plaintiff.

The taxes assessed against these lands for the year 1920 became delinquent, and the lands were duly advertised and sold to the defendant at the tax sale held in December, 1921, and certificates of sale for taxes were duly and regularly issued to her. In due time she presented her certificates to the county auditor, and notices of expiration of time for redemption were issued and served and on September 18, 1926, tax deeds were issued. These tax deeds were not recorded. Upon the trial, the parties stipulated as facts that the taxes for which the sales were held had been duly and regularly levied; that notice of expiration of time for redemption had been given as required by law; that all proceedings leading up to the issuance of said tax deeds were on file and of record in the office of the county auditor of McHenry county; that such proceedings were in all respects regular and in accordance with law; that at the time of the issuance of the sheriff's deed the title to the lands involved in this controversy appeared of record in the name of the Stubbins Land & Loan Company; that the plaintiff was not informed and did not have knowledge at any time prior to the levy on the land under the execution that the defendant had or claimed any interest in the lands in question; that on February 8, 1927, and September 7, 1926, "the plaintiff made inquiries and examinations of the records as to the legal title to the aforesaid land and made inquiry from the auditor of McHenry county as to delinquent taxes due thereon," and that the said county auditor informed the plaintiff that there were delinquent taxes for the years 1923 and 1924 in certain stated amounts.

The plaintiff specifically disclaims any intention of questioning the legality of the tax deeds held by the defendant; but contends that inasmuch as defendant failed to record such deeds they became and

were void as against the plaintiff under § 5594, Comp. Laws 1913, and that, consequently, the sheriff's deed issued to him cuts off all interest and title of the defendant and vests in the plaintiff a title in fee. The trial court sustained this contention and defendant has appealed.

Plaintiff's claim of title is predicated solely upon the recording act (Comp. Laws 1913, §§ 5594–5598) which provides:

"Sec. 5594. Every conveyance by deed, mortgage, or otherwise, of real estate within this state, shall be recorded in the office of the register of deeds of the county where such real estate is situated, and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed or deed of bargain and sale, deed of quit-claim and release, of the form in common use or otherwise, is first duly recorded; or as against any attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance. . . .

"Sec. 5595. The term 'conveyance', as used in the last section, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged or incumbered, or by which the title to any real property may be affected, except wills and powers of attorney. The word 'purchaser' as used shall embrace every person to whom any estate or interest in real estate is conveyed for a valuable consideration, and also every assignee of a mortgage, lease or other conditional estate."

In our opinion § 5594, supra, does not have the effect of rendering an unrecorded tax deed void as against subsequent conveyances by, or attachments or judgments against, the person in whose name the title to the land described in such deed appears of record. In other words, we are of the opinion that the validity of a tax deed is not affected by the provisions of the recording act.

By the laws of this state (Comp. Laws 1913, § 2186) "taxes upon real estate are . . . . made a perpetual paramount lien thereupon against all persons and bodies corporate, except the United States and the state." Upon sale of the land for nonpayment of taxes, the cer-

tificate of sale constitutes a contract between the state and the purchaser (Fisher v. Betts, 12 N. D. 197, 96 N. W. 132), and vests in the purchaser a lien on the premises. Cruser v. Williams, 13 N. D. 284, 100 N. W. 721. The title to the land, however, remains in the former owner, subject to the lien for the taxes, until the time for redemption has expired. Cruser v. Williams, supra. "At the expiration of the time for redemption of lands sold for delinquent taxes, and after the filing of the proof of notice of expiration of period of redemption . . . and on production of the certificate of purchase," it becomes the duty of "the county auditor of the county in which the sale of such lands took place . . . to execute to the purchaser, his heirs or assigns, in the name of the state, a deed of the land remaining unredeemed;" which deed vests "in the said purchaser, his heirs or assigns, an absolute estate in fee simple in such land, subject, however, to all the claims which the state may have thereon for taxes, or other liens or incumbrances." Comp. Laws 1913, § 2206. The taxes or liens for which the state is given priority over a tax deed are only "those coming into existence subsequent to the tax upon which the deed is issued." Emmons County v. Bennett, 9 N. D. 131, 133, 81 N. W. 22.

"The policy of the registry law is that the title and all that affects it should be disclosed by the public records, and upon the theory that it is thus shown, the rule obtains that a purchaser may rely upon the title as it appears of record, and that he will be protected against unrecorded conveyances, outstanding equities, secret liens and conditions of which he has no notice." Webb, Record of Title, § 154. See also 23 R. C. L. p. 171. But "a record gives constructive notice only to persons in the same line of title, or, in other words, only to persons who trace their title back through the same grantor" (McCoy v. Davis, 38 N. D. 328, 337, 164 N. W. 951); and the "mere recording of an instrument out of the chain of title does not, of itself, constitute constructive notice of such instrument so as to bind one who deals with the apparent owner of the land according to the record, in ignorance of the existence of such instrument." Doran v. Dazey, 5 N. D. 167, 169, 57 Am. St. Rep. 550, 64 N. W. 1023; McCoy v. Davis, 38 N. D. 328, 337, 164 N. W. 951; Comp. Laws 1913, § 5598.

Our statute (§ 5594, supra) places liens obtained by attachments

or judgments on par with liens created by written contract and makes such liens, and title based upon a valid sale under an execution, paramount to lien or title evidenced by an unrecorded conveyance of which the judgment creditor and purchaser had no notice. McCoy v. Davis, 38 N. D. 328, 164 N. W. 951. In a word, the statute places liens created by attachments or judgments on precisely the same basis as liens created by written contract so far as priority is concerned; but there was, of course, no intention to make liens obtained by means of attachment or judgment, or to make titles derived through an execution sale, superior to those created by contract of the record owner. Section 5594 supra, by its express terms applies only in favor of a *"subsequent purchaser* in good faith and for a valuable consideration." Sarles v. McGee, 1 N. D. 365, 26 Am. St. Rep. 633, 48 N. W. 231. This rule is as applicable to liens created by attachment or judgment and to titles derived through judicial sales as to liens created and titles derived through contracts of the record owner. "By subsequent purchaser in this section," said Judge Cooley (Smith v. Williams, 44 Mich. 240, 244, 6 N. W. 662), "is meant a subsequent purchaser from the same grantor." The defendant here was not such a purchaser. She does not claim under the record owner, but by conveyance from the state which if valid cuts off the title of the record owner altogether. Smith v. Williams, supra. A tax deed makes no reference to the former owner or owners. It does not purport to convey the estate of the former record owner. "There is no privity between the holder of the fee and one who claims a tax title upon the land. The latter title is not derived from but in antagonism to the former. The holder of the latter is not a privy in estate with the holder of the former." Hussman v. Durham, 165 U. S. 144, 147, 41 L. Ed. 664, 665, 17 Sup. Ct. Rep. 253.

A valid tax title is a new title,—"an independent grant from the sovereignty, which bars all other titles or equities, whether of record or otherwise." Windom v. Schuppel, 39 Minn. 35, 38 N. W. 758. It "cuts off all interests acquired by purchasers at tax sales for taxes prior to that upon which the tax deed is based." Emmons County v. Bennett, 9 N. D. 131, 133, 81 N. W. 22.

"If the tax deed is valid, then from the time of its delivery it clothes the purchaser, not merely with the title of the person who

had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them." Hefner v. Northwestern Mut. L. Ins. Co. 123 U. S. 747, 751, 31 L. ed. 309, 311, 8 Sup. Ct. Rep. 337.

"A tax title, from its very nature, has nothing to do with the previous chain of title; does not in any way connect itself with it. It is a breaking up of all previous titles. The party holding such title, in proving it, goes no further than his tax deed; the former title can be of no service to him, nor can it prejudice him. . . . In an ordinary case, it matters not how many different interests may be connected with the title, what may be the particular interest of the party in whose name the property may be listed, for taxation; it may be a mere equitable right; if the land be regularly sold for taxes, the property, accompanied with a legal title, goes to the purchaser, no matter how many estates, legal or equitable, may be connected with it." Gwynne v. Niswanger, 20 Ohio, 556, 564. See also Jinkiaway v. Ford, 93 Kan. 797, L.R.A.1915E, 343, 145 Pac. 885, Ann. Cas. 1916D, 321; Kansas State Agri. v. Linscott, 30 Kan. 240, 1 Pac. 81; Goodman v. Sanger, 91 Pa. 71; Patterson v. Langston, 69 Miss. 400, 11 So. 932.

Respondent cites and invokes § 2205, Comp. Laws 1913 which reads:

"It shall be the duty of the county auditor of each county in this state to execute, acknowledge and deliver to any person who shall be entitled to receive from the state or from the county the title to any piece, parcel or lot of land within the county, under or by virtue of any law providing for or relating in whole or in part to the levying or collection of taxes or the sale of real estate for nonpayment of taxes, a deed in fee simple of such piece, parcel or lot of land, and such deed shall pass to such person absolute title to the land therein described, and *may be recorded as other deeds of real estate are recorded, and the record thereof shall have the same force and effect in all respects as the record of such other deeds and may be evidenced in like manner.*"

It is contended by the respondent that the provision in this section,

which we have italicized, discloses a legislative intention or construction that tax deeds shall be deemed conveyances which, if not recorded, are rendered void, as against a subsequent purchaser or incumbrancer from the holder of the record title, under section 5594, supra. The argument does not appeal to us as being sound. It ignores the character of the title conveyed by a tax deed. The argument is predicated upon the erroneous premise that a tax deed is an instrument in a chain of title, and, in effect, is a conveyance by the record owner. The provisions of § 2205, supra, are indicative rather of a legislative construction that a tax deed is not to be deemed a conveyance, within the purview of § 5594. It will be noted that the provision of § 2205, supra, relating to recording of a tax deed is permissive merely. It merely provides that a tax deed shall be entitled to record, and does not purport to render a tax deed invalid unless it has been recorded.

The recording act permits any instrument or judgment affecting the title to or possession of real property to be recorded (Comp. Laws 1913, § 5546), in order that the title and its history may be preserved in the records. 23 R. C. L. p. 171. Many instruments entitled to record could in no case be affected by the provision in the recording act rendering an unrecorded conveyance invalid as against a subsequent purchaser without notice. The provision in § 2205 supra, relating to the recording of a tax deed was originally embodied in substantially the same language, in the revenue act of 1897. See Laws 1897, chap. 126, § 92. At the time the 1897 act was enacted the recording act was in force, and the section which (with subsequent amendments) appears as § 5594, Comp. Laws 1913 provided that "every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or incumbrancer . . . in good faith and for a valuable consideration, whose conveyance is first recorded." Comp. Laws 1887, § 3293. If the lawmakers had been of the belief that a tax deed was a conveyance in a chain of title from the original grantor, so that if it were not recorded it would be rendered void as against subsequent purchasers or incumbrancers from the holder of the record title, then obviously there was no necessity for inserting the provision in the revenue act of 1897 permitting a tax deed to be recorded, and such provision was wholly superfluous. The provision permitting a tax deed to be re-

corded was doubtless inserted so as to eliminate any question as to the right of the holder of a tax deed to have the same recorded, and to grant express permission to the holder of a tax title to establish upon record the first link in the new chain of title.

It follows from what has been said that the judgment appealed from must be reversed and the cause remanded with directions to enter judgment in favor of the defendant. It is so ordered.

BURKE, Ch. J., and BURR, BIRDZELL, and NUESSLE, JJ., concur.