[File No. 6313.]

KATHERINE E. STURGEON, Respondent, v. STATE OF NORTH DAKOTA, Fred H. Denham and Casper Huber.

STATE OF NORTH DAKOTA, Appellant.

(258 N. W. 118.)

Opinion filed December 13, 1934.   Rehearing denied December 20, 1934.

*P. O. Sathre,* Attorney General, and *Charles A. Verret,* Assistant Attorney General, for appellant.

*J. W. Slurgeon,* for respondent.

BURR, Ch. J. This controversy resolves itself into an action for partition of real estate and for accounting.

In 1919 Fred H. Denham and Chris Savage had each an undivided half interest in the north half of Section 35 in township 140, range 100 in Billings county; at that time Denham gave to the state a mortgage upon his interest and other lands not involved herein, to secure the payment of a loan of $4,800 made to him from the school fund of this state. From that date until 1926 both Denham and Savage defaulted in the payment of taxes on this land described, which taxes were paid

by the state. The mortgage was foreclosed, bid in by the state for the amount due on the mortgage and the amount of taxes paid up to and including the year 1925, with interest, and sheriff's deed was issued in September, 1926. Later the state paid all the tax for the years 1921 to 1929, inclusive, in the sum of $1,291.14.

In February, 1928, Savage deeded his interest in the premises to one Hoover or Huber by warranty deed and on September 11, 1933, the latter conveyed the undivided half interest to the plaintiff herein.

The record indicates that, after the year 1926 at least, the land was practically abandoned by Savage and Huber. The state took charge of and collected the rents and profits, which rents and profits for the years 1927 to 1933, inclusive, amounted to $880, one-half of which rightfully belonged to Savage, Huber or plaintiff.

In 1919 there was a building upon the land involved which had been used as a dwelling house and in 1933, the state, in the management and control of the land, sold this building for fifty dollars. It is admitted that one-half of the value of the building at the time of sale is due the plaintiff.

The parties have stipulated that the land may be partitioned, that the title to the northeast quarter be quieted in the state of North Dakota and title to the northwest quarter be quieted in the plaintiff.

It is the contention of the state that while it is accountable to the proper joint owner for half of the rents and profits collected, and for one-half of the value of the building sold, yet it has the right to offset one-half of the taxes which it had paid for the years 1919 to 1933 inclusive, and as this exceeds the rents, profits and value of the building it is entitled to judgment for the difference.

Plaintiff contends that she is an innocent purchaser and therefore not liable for any of the taxes paid; but she is entitled to one-half of the rents and profits collected; and to one-half of the value of the building alleged to be worth seven hundred and fifty dollars.

The trial court adjudged title to the northwest quarter to be in the plaintiff and title to the northeast quarter to be in the defendant as stipulated by the parties; found the value of the building to be six hundred dollars at the time it was sold and that plaintiff was entitled to three hundred dollars and interest as the value of her half interest; found the plaintiff was entitled to four hundred and forty dollars as one-

half of the rents and profits collected, allowed the same with interest up to December 1, 1933, or the sum of five hundred and twenty-three dollars and fifty-three cents; found also that plaintiff was not liable for any of the taxes paid. Judgment was entered in accordance with the findings and the state has appealed demanding a trial de novo.

There are three main issues to be determined—should the plaintiff be required to pay any of the taxes paid by the state; is the plaintiff entitled to the rents and profits collected by the state prior to the time she obtained title to the land; and what was the value of the building at the time it was sold?

It is clear the state cannot recover from the plaintiff for any of the taxes paid prior to the time of the foreclosure. These taxes were added to the amount due on the mortgage and when the land was foreclosed it was foreclosed for the amount due on the land together with the taxes and bid in by the state for the total amount. The state obtained title to the land for this sum. The sale of the land extinguished the debt due on the mortgage and paid the costs and the taxes that were paid. It is true that in paying the taxes the state paid a share that should have been paid by the other joint owner. We are not concerned here with whether it paid more taxes than it should have paid or whether it could have collected from the joint owner because it paid his share of the taxes. The fact remains the state bid in the land for the total amount it expended and got the land for this sum. The amount paid for taxes was part of the purchase price paid by the mortgagee. State ex rel. Old Line Ins. Co. v. Olsness, 63 N. D. 695, 706, 249 N. W. 694. See also Harvison v. Griffin, 32 N. D. 188, 155 N. W. 655; Security Bldg. & L. Asso. v. Bacon, 62 N. D. 658, 665, 244 N. W. 644. Thus the taxes were paid and the land freed from the lien of the taxes. This was the situation when the state obtained title to this one-half interest.

The taxes paid by the state after 1926 present a different issue. At this time the half interest was still held by Savage; but the state admits in the brief that for 1926 only "the half interest of the state were assessed" and consequently the state is "not making any claim . . . for the taxes for that year." Huber obtained his warranty deed in February, 1928, and we therefore must assume he had no notice of any lien or any claim on the part of the state for taxes paid prior to that

time. It is admitted by the state that the land, "has not been assessed for the years 1930-1931-1932 and 1933," consequently the only taxes which the state paid after Huber received his deed were the taxes assessed in 1927, 1928 and 1929. Even if the state, because of its paying the half of the tax which Huber should have paid, is entitled to assert the lien which the county had for taxes it is admitted the state collected the rents and profits for those three years. While the record shows the total amount of taxes paid by the state during the years 1921 to 1929, inclusive, as claimed by the state exceeded $1200 and the total amount of the profits collected by the state amounted to $880 the record does not show the taxes and profits for each year. The total amount of taxes paid exceeded the profits; but some of the taxes were included in the purchase price at the foreclosure sale. However, before the state could impress the land with any claim of lien for taxes it must show the amount of taxes paid for the years 1927, 1928 and 1929  .  .  . the time Huber held the land. As against Huber the state would be held for his share in the profits for those years. Under the state of the record we hold that it is just and equitable to consider that the taxes paid for those three years were cancelled by the profits for those three years. It is not necessary for us therefore to determine whether the taxes were legally levied or any of the other objections raised by plaintiff against the taxes, including the question of the statute of limitations. We find that at the time Huber quit claimed to the plaintiff any claim for taxes which the state may have had for these three years was offset by the claim Huber had for rents and profits those years.

All the plaintiff has is a quitclaim deed wherein Huber "does hereby Remise, Release and Forever Quit Claim  .  .  .  the following described real estate  . , .  and all the Estate, Title and Interest  .  .  . either in law or in equity, of, in and to the said premises; Together with all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof; To Have and to Hold the same to the only proper use of the said Katherine E. Sturgeon her heirs and assigns forever." The plaintiff got merely the interest of her grantor in the premises; but if the taxes paid for him were offset by profits and the state cannot impress this land with a lien for those taxes, plaintiff therefore got the land free from any claim for taxes for the years 1927 to 1929; inclusive.

Plaintiff seeks to recover for all the rents and profits collected by the state prior to the time of purchase. One-half of these rents and profits belonged to Savage or Huber at that time. There is no assignment of their claims to the plaintiff. It is true Huber gave her a quit claim deed and conveyed "all the rents and profits" thereof which might include profits for the year 1933. But that merely conveyed the land. The quit claim deed implies "that the grantor assumes to convey only his right or interest, whatever it may be, and that he declines to bind himself to do more." Alsterberg v. Bennett, 14 N. D. 596, 600, 106 N. W. 49. It did not operate as an assignment of the prior claims and there is no proof showing any rents and profits inuring during the year 1933.

The building involved was sold by the state and removed from the premises after the plaintiff became the owner of the half interest. The plaintiff is therefore entitled to one-half interest of the value of the building at the time it was sold. It is undisputed it was sold for fifty dollars, but the trial court found it was worth six hundred dollars. The finding of the trial court in such case as this is entitled to appreciable weight. Peterson v. Baird, 63 N. D. 604, 608, 249 N. W. 690; Andersen v. Ressler, 57 N. D. 655, 223 N. W. 707; Doyle v. Doyle, 52 N. D. 380, 388, 202 N. W. 860. Nevertheless this court must itself determine the value on this trial de novo.

At the time of sale of the building it had been practically abandoned and was greatly damaged. Originally it was a dwelling house but afterwards had been used as a granary, and when plaintiff purchased the land half of the floor was broken, the windows and doors were gone, the chimney broken down and roof leaked at chimney. It is the claim of the plaintiff that the building suffered damage largely through mismanagement on the part of the defendant; but when plaintiff bought the land she bought a half interest in the building as it was at that time—not as it was when the state first exercised control. There is nothing in the testimony to show there was any appreciable difference between the value of the land at the time the plaintiff got her deed and immediately after the time the building was removed. This time which elapsed was only a few weeks. The building was in a state of dilapidation. There is nothing to indicate that the presence or absence of the

building in any way affected the value of the land. There is testimony that fifty dollars was all that could be salvaged.

The record shows quite clearly that neither Savage nor Huber made any attempt to look after the land, and this condition continued until Huber quitclaimed to the plaintiff. There is nothing to indicate any of these joint owners took any interest in the building. Each permitted the building to go to wreck and ruin and even the plaintiff showed no attempt to do anything to put the building in repair. True she did not get her interest in the land until shortly before the building was sold; but she is here in a court of equity asking for what is just and right. She knows the state paid taxes on this land far in excess of any profits obtained. She asks for one-half of these profits for years prior to her ownership, but at the same time refuses to pay any of the taxes levied during these years. We are satisfied from the record that the state acted in good faith in attempting to salvage what it could out of this abandoned house. We find $50.00 is all the state could reasonably be expected to get for a building its co-tenant neglected and which the state attempted to save. There is nothing to indicate any larger sum could have been obtained for it, and its removal is not shown to have in any way lessened the value of the quarter section. We find it only just and equitable that the plaintiff should not get for her interest in the building any more than the state got for its interest. The pleadings show the state had made a very modest claim of five dollars per year for looking after the land. Even this claim was resisted by the plaintiff so that the state abandoned it. The plaintiff should not recover more than twenty-five dollars as the value of her interest.

The judgment of the trial court in confirming the title to the northwest quarter in the plaintiff and title to the northeast quarter in the defendant and in holding that the plaintiff is not liable for any of the taxes is approved by this court and made part of the judgment; but the judgment of the lower court is modified to the extent of disallowing plaintiff's claim for rents and profits. The plaintiff is entitled to judgment for twenty-five dollars for her interest in the building sold. The appellant having obtained a substantial modification of this judgment by reason of the appeal costs will be allowed the state on appeal. The district court will enter judgment in accordance with this opinion.

CHRISTIANSON, MOELLRING, NUESSLE and BURKE, JJ., concur.