[File No. 6510.]

A. H. NELSON, Appellant, v. STEPHEN J. MURTON et al.
HANS KLOSTER, Respondent.

(277 N. W. 390.)

Opinion filed January 15, 1938.

*R. E. Swendseid,* for appellant.
*F. F. Wyckoff,* for respondent.

BURR, J. This is an action to determine conflicting claims to real property in Mountrail county. The action was commenced in 1937 and the summons and complaint served upon Kloster March 18 of

that year. The complaint is in the usual form and the defendant Kloster is the only answering defendant. In his answer the defendant alleges that the house and the barn on the land are his property and "that they were moved upon said premises for temporary use of this defendant with no intention that the same become a part of the said real estate, and that same are not a part of said real estate."

The reply states, that said buildings were so affixed to said land and used and occupied as permanent farm buildings by said defendant at the time Mountrail county obtained tax title thereto and have ever since been so affixed thereto; that said defendant abandoned said land and buildings on or about 1929; that plaintiff had no knowledge or information that said defendant made any separate claim for said buildings or claimed that they were personalty, at the time he so purchased said land from Mountrail county, and believed that said buildings were a part of the land; that said defendant is estopped to deny that said buildings are permanently affixed to said real estate."

The trial court found the defendant was the owner of the buildings and entitled to entry on the land for the purpose of removal. Judgment was entered accordingly and plaintiff appeals, demanding a trial de novo.

In 1918 the defendant bought the land for $3200 under a contract for deed and subject to a mortgage for $1000.00. The amount of payments is not shown. At one time he paid about $600 on the contract. When he bought the land there was no house or barn upon it, and within a week thereafter he began building a house thereon, later adding an addition and digging a cellar. He claims that after the contract was made and while building the house he had a conversation with his vendor, who inquired why he was not putting stones under the house, and he replied,

"'I don't want it on stones.' I say 'I want it to remain personal property.' I say 'If things don't turn out right I don't want to lose my buildings. I want it to remain personal property.' 'Well,' he says, 'that is all right with me, just so you do the breaking you promised.' . . ."

This is all of his testimony with reference to his alleged agreement with his vendor and all of it was stricken out by the court upon motion of the plaintiff. There is no claim such agreement was incorporated in

the contract of sale. The vendor did not testify and we do not know the status of the contract, except that defendant did not get a deed.

In 1921 defendant bought a barn and moved it onto the land. He also planted trees and broke up the land and raised crops thereon. He lived on this land from 1918 until 1931 and with a family, consisting of three boys and a girl, made his home there. He had no other home during those years. He alleges he never placed any foundation under the buildings, but that they were simply resting on the ground except so far as it was necessary to block them up in order to level against the inequalities of the ground. There is testimony on the part of the plaintiff that the buildings were placed upon blocks and that the house had been banked with earth.

The defendant admits he built the house to live in and placed the barn thereon for use, that these were the farm buildings he had during the years he occupied the place, and that at no time did he ever list the buildings for taxation as personal property.

The land was sold for taxes in 1926 and tax deed issued to Mountrail county in May 1931. No reference to buildings was made in this deed. The plaintiff inspected the land and buildings and thereafter on December 2, 1931, the county sold the land to him for $700 to $800, giving him a deed therefor and making no reservation of buildings whatever.

The tax deeds divested the defendant of all interest in the land. They gave a new and complete title, and independent grant from the sovereign authority. The purchaser had not merely the title of the person who had been assessed for the taxes and neglected to pay them, but he had a new and complete title which had nothing to do with the previous chain of title, nor was it in any way connected with it. See Baird v. Stubbins, 58 N. D. 351, 356, 226 N. W. 529, 65 A.L.R. 1009; Peterson v. Reishus, 66 N. D. 436, 442, 266 N. W. 417, 105 A.L.R. 724.

Immediately after buying the land plaintiff notified Kloster that he had bought the land. At that time there was some conversation relative to the buildings, the defendant claiming them, but it is conceded plaintiff at that time claimed the buildings as being bought with the land. Kloster removed from the land about Christmas, 1931, leaving

the buildings thereon, and made no attempt to get possession of them until after the commencement of this action, and then merely asserted title to them. In the spring of 1932 the plaintiff placed his tenant on the land and has had possession of the land and the buildings ever since December, 1931.

Since the plaintiff got possession of the land he has paid all the taxes thereon and repaired the barn by putting lumber on it and re-roofing it, but made little or no improvements upon the house.

Section 5249 of the Compiled Laws states that "Real or immovable property consists of:

"1. Land.

"2. That which is affixed to land.

"3. That which is incidental or appurtenant to land.

"4. That which is immovable by law."

Section 5251 of the Compiled Laws defines fixtures by saying,

"A thing is deemed to be affixed to land when it is . . . permanently resting upon it, as in the case of buildings."

Buildings to become real estate do not need to have foundations thereunder, nor need they be attached to the ground. Neither does "permanently resting" upon the ground mean perpetually remaining there or remaining there forever, but rather that they are "as permanent as the business in which they are to be used, and the intention with which they are placed is to be sought in the surrounding facts and circumstances. . . ." See Fisk v. People's Nat. Bank, 14 Colo. App. 21, 59 P. 63, 65. It is true in this case cited the court is dealing with chattels annexed to real estate, but the definition of "permanently" is applicable to the case at bar. The term is used in a sense as contrasted with "transient" or "temporary." When the defendant purchased the land he proceeded to make his home thereon. For that purpose he built his house, added an addition to it, bought a barn and moved it onto the place, planted trees, improved the spring and well, and clearly intended to make the place his home. The land was his and he lived there over thirteen years. The owner of the buildings was not a stranger to the land on which they rested at the time he put the buildings thereon. Both were his. The house and the barn were as "permanently resting" on the land as could be expected. There is nothing

to show other than that he intended the buildings should rest on the land permanently in this sense. They would be there all the time he made his home there, and he made his home there from 1918 until after plaintiff bought the land. The conversation he claims to have had with his vendor was stricken from the record; but, giving it due weight, it is merely an item of evidence to be considered in determining the actual fact involved—were the buildings permanently resting on the ground so as to become part of the real estate. Evidently defendant himself never considered the buildings personal property during all those years for he never listed them for taxation as personal property. If he considered them part of the real estate, he would not list them separately. They would not be subject to separate assessment; but if they were personal property and were so considered by the defendant to be personal property, he would have listed them with the farm machinery, stock, and other personal property that he had. He lost the land when the tax deed was issued to the county in May 1931, more than six months before plaintiff purchased the land. The record does not show the defendant made any attempt to remove the buildings then or made any claim to ownership of them. The farm, with the buildings, was considered by the taxing power as real property, and nothing was said by the defendant to the contrary. It is true the improvements were not valued so as to enhance the taxable value of the land, but they were put there to improve the land and to make it habitable; they were necessary for that purpose; the land and the buildings constitute the home of the defendant; the tax sale was held in 1926 and it must be clear that after all those years the claim that the buildings at all times were personal property is an afterthought.

While the finding of the trial court in this case is entitled to appreciable weight (Sturgeon v. State, 65 N. D. 274, 281, 258 N. W. 118; Peterson v. Baird, 63 N. D. 604, 608, 249 N. W. 690), nevertheless it is clear that these buildings were farm buildings "permanently resting" upon the land, put there by the one who was the equitable owner of the land and entitled to the possession of the land. It is true "intent" must be considered, but at times acts speak louder than words. He could not make this place his home without these buildings and they were placed there for the purpose of making the home. That is

too clear for argument. The judgment is reversed and judgment ordered for the plaintiff.

CHRISTIANSON, Ch. J., and NUESSLE, and MORRIS, JJ., concur.

SATHRE, J., did not participate.