KILLIAN, Appellant, v. HUBBARD et al., Respondents
(9 N. W.2d 700.)

(File No. 8596. Opinion filed May 27, 1943.)

**E. E. Empey,** of Rapid City, for Appellant.
**Williams & Sweet,** of Rapid City, for Respondents.

SMITH, J. Three small, rough lumber structures, a three-room house, barn, and chicken house, constitute the subject of this litigation. Plaintiff, the record owner of an undivided one-half interest in the land upon which these buildings are located, seeks to enjoin the defendants from carrying out a threat to remove them therefrom. The learned trial court found the buildings to be the personal property of defendant McVey and entered judgment for defendants. Of the several propositions plaintiff discusses in presenting her assignments of error, but two warrant consideration, namely, (1) through annexation, the buildings took on the character of real property and (2) the defendants are bound by the judgment quieting title in plaintiff in a former action.

At the trial plaintiff deraigned her title to the land and rested her case on the rebuttable presumption that buildings located on land are a part of the realty. See 22 Am. Jur. 778, § 63. The defendants sought to overcome this presumption by evidence which stands practically undisputed in the record. Plaintiff predicates her argument under her first proposition on the insufficiency of that evidence. Before we examine the evidence, we turn to the applicable principles of law.

In treating with the principles which govern in determining whether particular property which, separately considered, would be classed as a chattel, but which has become subject to classification as real property because of its relation to land, the text of 22 Am. Jur. 715, § 3 and at 718, § 6, includes the following: "The general course of modern decisions, in both English and American courts, is against the common-law doctrine that the mode of annexation of a fixture is the criterion, whether slight and temporary or immovable and permanent, and in favor of declaring all things to be fixtures which are attached to the realty with a view to the purposes for which it is held or employed. This has led to the formulation and recognition of the following general tests which may be applied in determining a particular case: (1) Annexation to the realty,

either actual or constructive; (2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold. * * * Of the three tests * * * the clear tendency of modern authority seems to be to give pre-eminence to the intention to make the article a permanent accession to the freehold, * * *." The views thus expressed have been followed by this court. Metropolitan Life Ins. Co. v. Jensen, 69 S. D. —, 9 N. W.2d 140; Arlt v. Langley, 56 S. D. 79, 227 N. W. 469. The quoted principles influenced the interpretation placed on SDC 51.0104 in Metropolitan Life Ins. Co. v. Jensen, supra. That section reads as follows: "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws."

■ Predicated upon the foregoing section, plaintiff hastens to the conclusion that these buildings take on the character of realty because they are "permanently resting" upon the land. Whether at the time of their erection these buildings were intended to rest "permanently" or "temporarily" upon the land is the very question at issue. Under the adopted construction of SDC 51.0104, supra, the ultimate conclusion of the issue as to whether the annexation was permanent or temporary must be predicated upon an examination, in the light of these accepted tests, of all of the evidenced circumstances and not solely upon a separate consideration of the factor of physical annexation. See Nelson v. Kloster et al., 68 N. D. 108, 277 N. W. 390.

■ In connection with SDC 51.0104, supra, plaintiff cites SDC 51.1103, reading in part as follows: "When a person affixes his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land unless he chooses to require the former to remove it, * * *.", and to the applica-

tion made thereof in Milison v. Mutual Cash Guaranty Fire Ins. Co., 24 S. D. 285, 123 N. W. 839, 840, 140 Am. St. Rep. 788.

The pertinent testimony considered in the cited case was as follows: " 'I know the house that Mr. Milison used to own and that was burned up. I used to own it, and I sold it to William Rule, and he sold it to Mr. Milison. When I sold it to Rule, I did not own or claim to own the land on which the house stood. Some fellow what was called John Sawyer claimed it belonged to him. He applied for patent. I did not sell the lot, but the house.' " Founding its conclusion on this evidence, this Court said: "It is clear, therefore, from the evidence that. the dwelling house insured was not the property of the plaintiff, and in the absence of evidence showing a lease or contract on the part of the owner of the mining claim permitting the plaintiff to retain possession of the dwelling house, or the right to remove the same from the land, and in the absence of any acts or declarations on the part of the owner of the mining claim by which he would be equitably estopped from asserting his rights to the building, he had the legal title to, and the right to possession of, the same, and could at any time have enforced that right as against the plaintiff."

If we rightly understand plaintiff's counsel, he has gleaned from this language a holding that SDC 51.1103, supra, requires proof of an express agreement permitting the removal of property physically affixed to real property in order that its character as personalty may be said to persist. We do not share that view of the statute nor do we believe that the possibility of an implied agreement for the removal of the buildings from the real property arising from the circumstances under which they were erected was presented in the cited case or considered by this Court in wording its opinion. It will be observed that the evidence considered in that case does not embrace the circumstances under which the building was erected; it but deals with claimed past and present ownership.

In writing for the Minnesota Court in a case where, in

the absence of a controlling statute, the propriety of imply-ing an agreement for removal was under consideration, the late Mr. Justice Mitchell reasoned as follows: "Hence, re-ducing the facts found to their lowest denomination, they amount to just this: Dobson, who had no estate in the land, erected the mill at his own expense on the land of Stanton, 'with the knowledge and consent' of the latter. The court did not find, and stipulated facts do not disclose, a single other fact bearing on the question of the intention, or implied agreement of the parties. The finding does, how-ever, amount to one that the building was erected by per-mission and license from Stanton. At first we entertained some doubt whether this alone was sufficient to establish an implied agreement for separate ownership. Such an im-plication would not be drawn when a different intention of the parties is indicated by the terms of any express agree-ment between them on the subject, or when a different in-tention is to be inferred from the interest of the party mak-ing the erections or from his relations to the title of the land. But we have arrived at the conclusion that, where the erections are made by one having no estate in the land, and hence no interest in enhancing its value, by the permis-sion or license of the owner, an agreement that the struc-tures shall remain the property of the person making them will be implied, in the absence of any other facts or cir-cumstances tending to show a different intention. This seems to us a reasonable doctrine, and one supported by the authorities, although we admit that in all the cases we have examined, including our own case of Little v. Willford, 31 Minn. 173, 17 N. W. 282, there were always some other facts or circumstances in evidence bearing upon the question of the intention of the parties." Merchants' Nat. Bank v. Stanton, 55 Minn. 211, 56 N. W. 821, 822, 43 Am. St. Rep. 491. The foregoing view was maintained in an opinion written by the late Mr. Justice Stone. See Karpik v. Rob-inson, 171 Minn. 318, 214 N. W. 59, and see Jones v. Great Northern Ry. Co., 100 Minn. 56, 110 N. W. 260, 9 L. R. A., N. S., 603; King v. Morris, 74 N. J. L. 810, 68 A. 162, 14 L. R. A., N. S., 439, 12 Ann. Cas. 1086|

A legislative intention to require an express agreement for removal is not revealed. Natural justice would not be served by so limiting the statute, and because purchasers of real property without actual or constructive notice will not fail to receive protection at the hands of the courts (see Workman v. Henrie, 71 Utah 400, 266 P. 1033, 58 A. L. R. 1352), we perceive no grounds based upon public policy justifying such a narrow construction of the statute. We hold that the agreement for removal may be either express or implied.

Another matter claims attention before we resort to the facts. Plaintiff classifies the evidence of defendants' witnesses as hearsay and contends, for that reason, no weight should be attached to it. Without laboring the point we accept the rule that such evidence, received without objection, is available to the trier of the fact and should be assigned its natural and logical probative effect. Annotation 104 A. L. R. 1130.

The record reveals the following facts: The land was patented to a corporation as a mining claim. The record title remained in the corporation for many years and until it passed to the county under a tax deed. In 1937 one Mason, plaintiff's predecessor in interest, and one Vinzant entered into a contract for deed with the county under which they became purchasers of the real property. While title was in the names of these two purchasers, an action to quiet title was brought against certain named defendants and unknown persons. Thereafter Mason transferred his undivided interest in the property to the plaintiff, his housekeeper. After Mason acquired an interest in the property and at about the time of the proceedings to quiet title, he called upon the defendant Hubbard, and sought to buy the buildings in question. Mr. Hubbard informed him that they were owned by defendant McVey. Thereupon and in company with Mr. Hubbard, Mason called upon Mr. McVey and attempted to buy the buildings. A sale did not result from these negotiations.

At the time of the trial the buildings were in a run-

down shed-like condition although they were occupied by defendant Hubbard, then at the age of eighty-nine years, and his daughter. They were erected on the land at a time when it was owned by the Pittsburgh Mining Co., by one Truax. They were not placed upon a foundation nor were they imbedded in the land. Their sills rested upon the ground and they were then readily removable. According to the chain of title introduced by plaintiff, Mr. Truax never had an interest in the real property. He and his wife taught school in the vicinity and erected these rough structures as their place of habitation. The number of years of their occupancy is not shown. After they ceased to occupy the property, one Kirby entered into its possession and claimed to have acquired title to it from Truax. Kirby was an aged bachelor and a close friend of McVey. He lived in this property for a period of years and just before his death made a gift, in view of death, of the property to McVey. McVey went into possession of the property some twenty years before the commencement of this action. For a period of time he permitted its occupation by one Miller and thereafter by one Peabody. About fifteen years prior to the commencement of this action, defendant Hubbard was placed in possession. The understanding at the time Hubbard went into possession was that he would pay such rent as he could and the taxes. Because of inability so to do, Hubbard never paid rent to McVey or taxes on the property. In fact McVey never listed this property as his personal property. During the twenty years McVey has been in possession of this property no one had questioned his title thereto until after Mason found himself unable to buy the property at a price he was willing to pay. Thereafter Mason asserted ownership by reason of its annexation to the land.

While it is of no legal significance, we note the fact that the owner of the other undivided one-half interest in the property, who had lived just across the road from these buildings for a number of years, refused to join in this action and in testifying for the defendants at the trial took the position that these buildings are owned by McVey.

That the evidence, upon which the learned trial court based its findings, is meager is manifest. Considering the nature of the subject matter, and the passage of time, it probably constitutes the best evidence defendants could produce to establish their title. Looking at it and searching for such light as it brings to bear upon the intention of Truax when he placed the structures upon the land, we cannot avoid the conclusion that, meager as it is, it is all of a piece, except possibly as to the factor of non-listing and non-payment of personal property taxes by McVey, and produces conviction that everybody concerned intended the title to remain in Truax. It would be illogical to assume that a school teacher and his wife could, or would, erect these structures upon the property of the mining company without its knowledge and consent. It should not be inferred that they entered upon the land as trespassers. It would be equally unreasonable to believe that they placed these buildings, which probably represented a major investment to them, on the land for the benefit of the mining company. They were not used nor were they adapted to use in mining operations. The fact that no person who owned the land is shown to have made any use of the buildings or to have asserted any claim thereto down through the years is not without logical bearing upon the intention of the owner of the real property and of Truax at the time the buildings were erected.

The evidence is weak and the case marginal, but as against the presumption on which plaintiff stands, as she attempts to wrest these buildings from those who have been in possession thereof for many years, we have concluded that it is sufficient. See Jones v. Great Northern Ry. Co., supra. We hold that it supports the inference that there was an implied agreement that the buildings might be removed and that they were intended to rest upon the land but temporarily. Hence we conclude that the finding of the ultimate fact that the property is personal in character is sustained by the evidence.

■ The plaintiff introduced in evidence the judgment

roll in the action to quiet title to which we have adverted. They now assert that the jurisdiction of the defendants was acquired in that action through service by publication upon unknown persons. Conceding that a judgment in an action to determine adverse claims to real estate will embrace adverse claims of parties thereto to fixtures, without so deciding, we think the contention of plaintiff, that the defendants were parties to that action and therefore bound by the judgment, is untenable. We entertain the view that in enacting the provision for service of unknown persons, in SDC 37.15, the legislature did not intend to include persons in possession in the class which it authorized to be named as parties and served as " 'all persons unknown who have or claim to have any interest or estate in or lien or incumbrance upon the premises described in the complaint.' " SDC 37.1505. Such persons in the eyes of the law are not unknown persons. They are either actually or constructively known to the plaintiff. SDC 65.0504. Rodriguez v. La Cueva Ranch Co., 17 N. M. 246, 134 P. 228; Priest v. Las Vegas, 232 U. S. 604, 34 S. Ct. 443, 58 L. Ed. 751; and see annotation L. R. A. 1918F, 618.

It is not clear from the briefs or the record that plaintiff has attempted to assert that she and her predecessor in interest, Mason, are purchasers without notice of the claims of the defendants. The foregoing views are predicated upon a conclusion that the plaintiff does not occupy the position of a purchaser without notice. SDC 65.0504; Bliss v. Waterbury, 27 S. D. 429, 131 N. W. 731.

Finding no error in the record, the judgment of the learned trial court is affirmed.

All the Judges concur, except WARREN, J., not sitting.