William COVERSTON, Plaintiff and Respondent,

v.

Harry EGELAND, Defendant and Appellant.

No. 7502.

Supreme Court of North Dakota.

April 18, 1955.

Daniel S. Letnes and H. G. Ruemmele, Grand Forks, for defendant-appellant.

Day, Stokes, Vaaler & Gillig; Grand Forks, for plaintiff-respondent.

MORRIS, Judge.

This is an action for damages for breach of contract wherein the plaintiff seeks to recover on the allegation that on April 16, 1952, the parties entered into a written agreement whereby the plaintiff sold and the defendant agreed to purchase Lot 11, Block 7, Dacotah Place Addition, Grand Forks, North Dakota, for the sum of one thousand dollars and that the defendant breached the contract by refusing to make the payments therein provided. The defendant in answer to plaintiff's claim sets up that the plaintiff failed to make a tender of marketable title to the premises involved in accordance with the provisions of the contract within thirty days and has never since made a tender of a marketable title and that the plaintiff is in default under his agreements and covenants.

The written contract involved herein is designated "Earnest Money Receipt." It is dated April 16, 1952, and acknowledges the receipt from Harry Egeland of one hundred dollars as earnest money in part payment of the purchase price of the lot involved in this action which was sold to Harry Egeland for the sum of one thousand dollars, one hundred dollars being paid in cash and nine hundred dollars payable on or before thirty days. The receipt further states: "We agree that the title to said premises is marketable and that conveyance will be made clear of all encumbrances, * * *." It is signed by the R. H. Sutton Real Estate Company. Attached to the receipt is an agreement signed by Harry Egeland to purchase the premises described above at the price and on the terms stipulated therein. Also attached is this statement: "I hereby approve and accept above offer to purchase and authorize R. H. Sutton Real Estate Co. to close sale and act as my agent in this transaction." which is signed by the plaintiff.

The plaintiff promptly furnished to the defendant an abstract of title which the defendant submitted to an attorney for examination. That attorney's opinion, dated April 18, 1952, recites the following:

"From this examination I am of the opinion that W. M. Coverston, of Grand Forks, N. D. is the owner in fee simple of said Lot, but that his title is not merchantable, because

"(1) Title was acquired by W. M. Coverston, by Tax Deed on October 2, 1945, as shown at entry #60 of the abstract. The record title owner prior to the time when the County took title, as shown at entry #59 and on October 2, 1940, was the First National Bank of Grand Forks, North Dakota, a corporation, as Trustee, pursuant to a certain written Trust Agreement dated September 17, 1926, as set out at entry #55 of the abstract.

"(2) At entry #61 there is a Judgment in an action wherein W. M. Coverston is the Plaintiff against various defendants, which Judgment is dated May 4, 1946. In my opinion this action did not make the title merchantable. An examination of the records of the Office of the Clerk of District Court, Grand Forks County, North Dakota, discloses the Receiver of the First National Bank of Grand Forks placed the jurisdiction over the Trust in the District Court in the year 1936, and that

the First National Bank of Grand Forks was discharged as Trustee on November 5, 1936, when the First National Bank in Grand Forks consented to act and became the acting Trustee of the Trust until July 13, 1949, when they were discharged by Order of the Court.

"The file discloses that Lot 11, in Block 7, Dacotah Place Addition to Grand Forks, was sold to Charles Breen, also known as Chas. A. Breen, of Grand Forks, on or about June 26, 1930, and that most likely a deed was issued to said Breen.

"It would be my opinion that the First National Bank in Grand Forks, as Trustee of the said Trust should have been named a Party Defendant, and that Charles Breen, also known as Chas. A. Breen, should also have been named a Party Defendant, and that neither of these parties are included in the designation of 'unknown persons' and that so far as their interests are concerned at the time of the action the Court acquired no jurisdiction over them and could not adjudicate their interests. This file also shows that Canada North Dakota Land Company, Ltd., Caroline W. Fraser, and Grace A. Fraser, the Trustors in the Trust Agreement, had no further interest in the trust or the property of the trust in 1936, and that the Home Builders Investment Company was entitled to all interest in the trust."

The plaintiff was promptly notified of the objections to the title and about a week later he, together with Mr. Sutton of the real estate firm, went to see the defendant. The plaintiff told the defendant that he would get the title fixed up and would have the title quieted a second time. The testimony is sharply conflicting as to what happened next. The plaintiff testified that he told the defendant that he would have title quieted a second time and the defendant agreed to wait until the second action was completed and would take the property. The defendant testified that he told the plaintiff that if the title was not cleared in thirty days the defendant could not use the lot. Sutton corroborates the defendant's testimony with respect to that conversation. There apparently were some further negotiations regarding the matter, for on December 22, 1952, defendant's counsel receipted to plaintiff's counsel for the abstract of title.

The one hundred dollar payment referred to in the earnest money receipt was in the form of a check signed by the defendant, dated April 14, 1952, and payable to the Sutton Real Estate Company. Mr. Sutton retained the check, refused to deliver it to the plaintiff, and later returned it to the defendant. On May 9, 1952, the plaintiff instituted a second action to quiet title to the lot in question. Proceedings in this action were conducted with dispatch and a second judgment quieting title in the plaintiff was rendered on July 8, 1952. This judgment obviated all of the objections to the marketability of the title raised by the examining attorney in his opinion of April 18, 1952.

The defendant refused to accept conveyance of the property on the ground that marketable title had not been perfected within thirty days from the date of the earnest money receipt and he was no longer bound thereby. In May 1953 the plaintiff sold the lot for five hundred dollars. In this action plaintiff asks damages in the sum of five hundred dollars, which is the difference between what the defendant had agreed to pay and what the plaintiff was finally able to sell the lot for. The case was tried to the court without a jury and the court found that the plaintiff and the defendant entered into a subsequent agreement wherein the plaintiff agreed to quiet title to the property to satisfy the objections of the examining attorney and that in compliance with this agreement the second action to quiet title was brought and additional tender of title made. He also found that the defendant refused to perform pursuant to the written agreement or the subsequent oral agreement and that plaintiff thereafter sold the property for five hundred dollars, which was the best price then obtainable. On the basis of these findings the trial court ren-

dered judgment in favor of the plaintiff for five hundred dollars, together with interest and costs. From this judgment the defendant appeals and demands a trial de novo.

Although deciding the case on the ground of a subsequent oral agreement by which the defendant agreed to accept the lot after the second action to quiet title, the court observed in his memorandum opinion that the objections of the examining attorney appeared to be more technical than substantial. In view of the conflicting and unsatisfactory condition of the evidence with respect to the subsequent agreement, we consider the record with respect to the objections to the title raised by the examining attorney to determine whether the title was marketable at the time it was first refused by the defendant.

It should be noted that the controlling question is whether at the time the title was first rejected it was marketable in fact. We are not interested directly in whether the abstract that was furnished showed a marketable title. The rejection was based upon matters other than those shown by the abstract.

The title held by the plaintiff, W. M. Coverston, was evidenced by a deed from Grand Forks County recorded in the office of the register of deeds of Grand Forks County on October 25, 1945.

■ The title of plaintiff's grantor is evidenced by a tax deed dated May 24, 1940, purporting to convey the lot in question from the State of North Dakota to the County of Grand Forks. This deed is regular and valid on its face and was recorded in the office of the register of deeds of Grand Forks County on January 20, 1941. A valid tax deed clothes the grantee with a new and complete title under an independent grant from the sovereign authority of the state. Conlin v. Metzger, 77 N.D. 620, 44 N.W.2d 617; Buman v. Sturn, 73 N.D. 561, 16 N.W.2d 837; Northwestern Mutual Savings & Loan Association v. Hanson, 72 N.D. 629, 10 N.W.2d 599; Nelson v. Murton, 68 N.D. 108, 277 N.W. 390; Peterson v. Reishus, 66 N.D. 436, 266 N.W. 417, 105

A.L.R. 724; Baird v. Stubbins, 58 N.D. 351, 226 N.W. 529, 65 A.L.R. 1009.

Whether such a deed appearing in a chain of title renders the title unmarketable, where under the law it purports to convey a new and paramount title from the sovereign and is regular on its face, is a question upon which the courts are not agreed. See 55 Am.Jur., Vendor and Purchaser, Section 224; Annotation 115 A.L.R. 140. This court has not passed upon the question. We need not pass upon it here for the parties tried the case on the theory that the tax deed standing alone in the chain of title rendered the title unmarketable.

■ On February 2, 1946, the plaintiff instituted an action to quiet title in statutory form covering sixteen lots in blocks 6 and 7, Dacotah Place Addition to the City of Grand Forks. Included among these lots was Lot 11 in Block 7. Certain named defendants were made parties, together with "all other persons unknown claiming any estate or interest in, or lien or incumbrance upon the property described in the Complaint." Judgment was entered quieting title in the plaintiff on May 4, 1946. Service upon unknown defendants was had by publication. Publication was based upon an affidavit by plaintiff's counsel in the form prescribed by Section 32–1707 NDRC 1943. The affidavit among other things recited:

"That the interests of the unknown persons Defendant in the above entitled action in the land described in the Complaint are not shown of record in the Office of the Register of Deeds, the Clerk of the District Court, or the County Auditor's Office of the County in which said land lies, and that Affiant does not know, and is unable to ascertain the names, residences, or Post Office addresses of any such persons who are proceeded against as unknown persons Defendant in this action."

Defendant contends that despite the recitals of the affidavit for publication the affiant thereof could have and should have

ascertained the names of three parties who had possible interests in the lot and that their interests are not determined by an adjudication of the interests of unknown persons. Those parties are the First National Bank in Grand Forks, Charles Breen, and Home Builders Investment Company. The defendant argues that the existence of the interests of these three parties are disclosed by the following facts and the knowledge of those interests could have been obtained by the affiant of the affidavit for publication. On September 15, 1926, the Canada North Dakota Land Company, Ltd., executed a trust deed covering the property involved to the First National Bank of Grand Forks which was recorded in the office of the register of deeds of Grand Forks County on September 28, 1926. The files in the office of the clerk of the district court of Grand Forks County disclosed that on October 20, 1936, the court heard a petition of the receiver of the First National Bank of Grand Forks pursuant to which the court on that date entered an order that all future proceedings in the supervision of the administration of the trust be had in the district court. The order also provided that the First National Bank in Grand Forks be appointed trustee and directed the receiver of the First National Bank of Grand Forks to turn over all assets of the trust to the new trustee. This order being complied with, a further order was entered on November 5, 1936, by which the First National Bank of Grand Forks and the receiver of that bank were released and discharged from their obligations as trustee.

On July 13, 1949, the substituted trustee filed a report and petition praying that the report be approved and that the petitioner be discharged from the trust and the trust closed. The report stated:

"That the amounts due Canada North Dakota Land Company, a corporation, Ltd., Caroline W. Fraser and Grace A. Fraser and Home Builders Investment Company under said Trust Agreement were paid in full before the Trust was turned over to your petitioner and said individuals have died and said corpora-tions have become defunct leaving no one on whom process may be served."

On July 13, 1949, the court entered an order approving the report of and discharging the First National Bank in Grand Forks as trustee. This order recited:

"It duly and satisfactorily appearing from the petition of First National Bank in Grand Forks, Trustee, that said Trust has been dormant since prior to 1936 and that all property in the Trust was either sold or abandoned prior to 1936 and that all monies for lots sold were delivered up to the persons entitled thereto and such persons have since died or if corporations have become defunct, and that the present Trustee has not taken any money or paid out any and that all lots sold were conveyed and the remaining lots abandoned and those have gone to tax deed and there is no property or money in the hands of the Trustee of any value."

From the documents in the trust file to which we have referred, or will refer, it clearly appears that neither the First National Bank in Grand Forks nor the Home Builders Investment Company has any interest in or claim to the lot in question. The situation is different with respect to the possible interest of Charles Breen, which we will consider in some detail.

■ In the petition of the receiver of the First National Bank of Grand Forks praying for the supervision of the administration of the trust by the district court it is alleged:

"That pursuant to said Trust Deed and said Declaration of Trust said First National Bank of Grand Forks, thereafter sold the following lots to the following named purchasers and received therefrom the amount hereinafter mentioned: * * *."

Then follows a list showing lot, block, purchaser, and amount. In this list appears Lot 11, Block 7, Charles Breen, Grand Forks, $348.61. In the order granting the

petition it is stated: "that the following lots were sold by said Trustee and deeds given therefor" and describing among others Lot 11, Block 7. Charles Breen not being a named defendant in the action to quiet title, the question arises whether he falls within the category of " 'All other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the complaint.' " Section 32–1705 NDRC 1943.

That petition containing the name of Charles Breen is one of many documents contained in the trust file. It does not appear to have been either indexed or docketed in that office under the name of Charles Breen or against the description of the lot involved in this action. See Section 11–1701 NDRC 1943. From the mere fact that the name of Charles Breen appears in the trust file it cannot be said that his interest in the lot is "shown of record in the office of the register of deeds, the clerk of the district court, or the county auditor of the county in which such land lies, * * *." Section 32–1707 NDRC 1943. But our problem is not yet solved. This section also requires the affidavit for publication to state that "the affiant does not know and *is unable to ascertain* the names, residences, or post office addresses of any of the persons who are proceeded against as unknown persons defendant." (Italics supplied.) The question now is whether the affiant of the affidavit of publication was, with reasonable diligence, able to ascertain the name of Charles Breen as a person having an interest in Lot 11, Block 7. An affirmative answer to that question removes Charles Breen from the class of persons who might be proceeded against as unknown persons.

■■■ The record title contains a trust deed to the First National Bank of Grand Forks and therefore gave notice of the existence of the trust. The order entered on October 20, 1936, assuming the supervision of the trust by the district court had the effect of a judgment of broad, binding import. Section 59–0410 NDRC 1943 provides:

"Every order entered in trust proceedings, upon the notice prescribed in section 59–0405, shall have the force and effect of a judgment. It shall be subject to appeal as provided by the terms of section 59–0425 and shall be binding upon all persons in interest resident within or without the state, known or unknown, ascertained and in being, or otherwise."

The order, while not mentioning the name of Charles Breen, contained the statement that Lot 11, Block 7 had been sold by the trustee and a deed given therefor. Reference to the petition on which the order was based would have disclosed his name.

It may be asserted that Section 32–1707 NDRC 1943 does not mention diligence in connection with the affidavit for publication. That section does, however, require the affiant to state that he is unable to ascertain the names, residences, or post office addresses of any of the persons who are proceeded against as unknown persons. Whether the affiant is unable to obtain this information is a question of fact. The statute does not purport to make the statement in the affidavit conclusive as to affiant's ability to obtain the information. In this case the court made no finding whatever with respect to the affiant's ability to do so. If it appears, as the defendant contends, that the affiant with reasonable diligence was able to ascertain the name of Charles Breen as a person having an interest in the property, the court had no jurisdiction to proceed against Charles Breen and decree his exclusion from any interest in the property as an unknown person.

After carefully considering the entire record, we have reached the conclusion that the name of Charles Breen was reasonably ascertainable and he was not a person over whom jurisdiction in the action to quiet title was obtained as an unknown person; that he was not named as a known defendant; and that the first action to quiet title did not effectively adjudicate such interest as he may have had in the lot in question.

798

We now reach the question of whether the failure to obtain jurisdiction over Charles Breen and thus bind him by the judgment in the first action to quiet title rendered the title of W. M. Coverston unmarketable. The examining attorney has used the term "merchantable" in his opinion but this term is ordinarily equivalent to "marketable" when used in connection with real estate titles. Dalton v. Lybarger, 152 Ark. 192, 237 S.W. 694; Bliss v. Schlund, 123 Neb. 253, 242 N.W. 436. In Kennedy v. Dennstadt, 31 N.D. 422, 154 N.W. 271, 274, this court said:

"A 'good and merchantable title' means a title in fee simple, free from litigation, palpable defects, and grave doubts, which will enable the purchaser not only to hold the land in peace, but which will also enable him, whenever he may desire to so do, to sell or mortgage it to a person of reasonable prudence and caution."

Section 32–0415 NDRC 1943 provides:

"An agreement for the sale of property cannot be enforced specifically in favor of a seller who cannot give to the buyer a title free from reasonable doubt."

See Bruegger v. Cartier, 29 N.D. 575, 151 N.W. 34.

In order to determine whether this title is free from reasonable doubt that would affect its marketability we refer again to the facts disclosed by the record. Title originates with the tax deed conveying the property to the County of Grand Forks. This deed is regular and valid on its face. It presumptively clothes the grantee with a new, complete, and paramount title. After the plaintiff secured a deed from the county he instituted an action to quiet title. In that action the court had jurisdiction of the subject matter and jurisdiction of all interested parties with the exception of Charles Breen whose possible interest we have already discussed. In that action the court, among other things, found:

"That tax deed proceedings vesting title to said property in Grand Forks County, Plaintiff Grantor, are in all things regular according to statute in said case made and provided for tax deed proceedings."

The action to quiet title covered sixteen lots, title to all of them being obtained from Grand Forks County that had acquired them through tax deed proceedings. The plaintiff built eight houses on them and made loans on each. Loans were obtained from six loan companies or banks. All of the houses were sold. No objections were made to any of the titles except this one.

The defendant asked the trial court to take judicial notice of the files in the first action to quiet title. While the judgment in that action is not binding on Charles Breen or determinative of his interests, if any, in the lot in question, the judgment and findings upon which it is based may be considered in this action as evidence bearing on the marketability of plaintiff's title. Mathews v. Hanson, 19 N.D. 692, 124 N.W. 1116; Freeman on Judgments, Fifth Edition, Section 1040; 32 C.J.S., Evidence, § 765. The judgment in that action was entered on May 4, 1946. Almost six years had elapsed between the time of entry of judgment and the sale of the lot to Egeland. No defendant, either known or unknown, over whom the court obtained jurisdiction could successfully seek to be permitted to defend after one year from entry of judgment. Section 32–1713 NDRC 1943. The record clearly shows that the interest of Charles Breen, if any, is the only interest that could possibly be asserted as against the judgment quieting title.

In favor of the title we have a tax deed, fair and valid on its face, against which no breath of suspicion has been directed. The deed discloses that taxes on the property were not paid for the years 1930 to 1935 inclusive. This deed is prima facie evidence of the truth of the facts recited in the deed. Strom v. Giske, N.D., 68 N.W. 2d 838. The plaintiff caused proceedings to be instituted quieting title in him. In the course of those proceedings the court found that the proceedings resulting in the tax deed were in all things regular and accord-

ing to the provisions of the statute applicable to the tax deed proceedings. Over one year has elapsed since the judgment was rendered. The marketability of eight similar titles was not questioned.

Against the title we have evidence of a purchase of the lot by Charles Breen sometime prior to August 27, 1936. There is no evidence that he acquired an interest in or asserted dominion over the property other than that disclosed by the trust file.

Our diligent search has not revealed a case presenting the combination of facts with which we are confronted. The attack is directed at the first judgment quieting title in the plaintiff. On that point some assistance may be derived from Campbell v. Doherty, 53 N.M. 280, 206 P.2d 1145, 9 A.L.R.2d 699. That case involved a suit to enforce specific performance of a contract for the sale of real estate. The proffered title was challenged on the ground that the chain of title included a decree quieting title which it was claimed was based in part on defective service of process on certain unknown heirs. The court held the title to be marketable. An annotation following the case sums up the holding of the court in these words:

"although decrees to quiet title, like other judgments and decrees, may be directly attacked because of a claim of lack of due process or other fraud on the court or adverse party, it does not necessarily follow that a title is unmarketable, unless there is more than a remote probability that such attack will be made, and that if made it would be successful."

This annotation also states:

"An examination of the few cases falling within the subject of the annotation reveals that whether a title dependent upon a decree or judgment, subject to direct attack, will be considered merchantable or unmerchantable depends on the probability of such an attack and the likelihood of a successful attack."

When we consider the unchallenged tax deed proceedings and the subsequent finding of the court in the first action to quiet title that the tax deed proceedings were regular and conducted according to statute, we have strong evidence of the validity and marketability of the title. To that may be added the practical fact that eight other similar titles were accepted by purchasers and loan companies. We are satisfied that at the time the title was rejected the probability was very remote that Charles Breen would assert any claim to the property. This record is devoid of evidence that any attack by Charles Breen would have been successful. The remote possibilities charged as defects against this title are not sufficiently substantial to raise a reasonable doubt as to its validity. The title was therefore marketable.

The defendant further challenges the judgment on the ground that the plaintiff failed to adequately prove any damages for breach of contract by the defendant. The record in this respect is unsatisfactory but it does not warrant a reversal of the judgment. The contract price for the lot was one thousand dollars and after the defendant refused to take title to the lot he sold it for five hundred dollars.

Without objection the plaintiff was permitted to testify that he sold the lot for five hundred dollars and took a loss of that amount and that five hundred dollars was as high a price as he could get for the lot, although he would have liked to have gotten more. The court sustained an objection to an inquiry as to whether the amount obtained was a fair value for the lot and in an exchange of comment between the court and counsel the court stated that the damages would be the value of the property as contracted for less what the plaintiff got for it. Defendant's counsel remained silent during this colloquy. It is clearly apparent that the court's announced theory of damages was the value of the property less what it sold for.

"Where a certain theory as to the measure of damages or the amount of

recovery is accepted or acted upon by the parties in the trial court as the proper one, it must be adhered to in the appellate court, whether it is correct or not." Warne v. Finseth, 50 N.D. 347, 195 N.W. 573.

The defendant having made no objection to the testimony and having remained silent when the court stated what the damages would be cannot challenge the finding of damages based on that testimony for the first time in this court. The judgment appealed from is affirmed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.