SANSOM, Respondent, v. GILT EDGE MINES, INC., et al Appellants.

(23 N. W.2d 276.)

(File No. 8820. Opinion filed June 3, 1946.)

**Clinton G. Richards,** of Deadwood, for Appellant.
**Robert C. Hayes, Alex Rentto,** and **Charles E. Carrell,** all of Deadwood, for Respondent.

RUDOLPH, P.J.

Plaintiff brought this action to quiet title to certain mining lands located in Lawrence County together with "all sluice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills and all other machinery or tools used in working or developing the mine on said properties; also all improvements that may have been placed on said real properties by the defendant, the Gilt Edge Mines, Inc.,

or under its direction." Judgment was entered for the plaintiff and the defendant, Gilt Edge Mines, Inc., has appealed.

The facts disclose that in 1934 the plaintiff was the owner of a number of mining claims in Lawrence County and on December 24, 1934, entered into an option contract with the defendant, Gilt Edge Mines, Inc. This contract of December, 1934, was superseded on July 3, 1936 by a new contract which in substance provided that the defendant corporation could purchase these mining claims for a total sum of $250,000 payable $50,000 down and $25,000 on the first day of July of the years 1937 to 1944 inclusive. The contract further provided that in case of default or failure on the part of the Gilt Edge Mines, Inc., to comply with the obligations of the contract and upon its termination because of such failure "the improvements that may have been placed on said property by the said Gilt Edge Mines, Inc., a corporation, shall be and remain a part of said property and the property thereafter of said Leslie C. Sansom, the owner." Pursuant to said contract the corporation went into possession of said mining properties. It constructed buildings and other improvements exclusive of machinery at a cost of $293,000. It made the payments under the contract to Mrs. Sansom amounting to a total of $125,000 and it installed machinery at a cost of approximately $91,000. In its operation of the mine it removed $600,000 worth of gold and claims to have expended a total of $1,200,000. The corporation defaulted on the payment due July 1, 1940, and the plaintiff brought an action to foreclose the contract. That action was contested and on May 14, 1941, the Honorable J. R. Cash made his judgment of foreclosure which was filed May 19, 1941, wherein it was adjudged "that said contract be cancelled of record; that the real property described in the complaint in this action and in said contract be restored to the plaintiff, free and clear of all interests, claims, or demands on the part of the defendant, that the improvements made upon said property by the defendant corporation remain thereon

as á part thereof in the possession and ownership of the plaintiff." No appeal was ever taken from this judgment entered by Judge Cash and the same has now become final.

In the present action there was testimony on behalf of the Gilt Edge Mines, Inc., that at the time the original contract was made in 1934 it was orally understood and agreed between the parties that the term "improvements" as used in the option contract meant buildings only and did not include machinery and other tools placed upon the property. This testimony on behalf of the corporation was denied by plaintiff and the trial court found that there was no such understanding by the parties relating to the term "improvements" as contended by the corporation.

The judgment in this action quieted title in the plaintiff to all of the land described in the complaint "together with all appurtenances connected therewith, such appurtenances consisting in part of: all sluice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills and all other machinery or tools used in working or developing the mine on said properties; also all the improvements that have been placed on said real properties by the defendant, the Gilt Edge Mines, Inc., or under its direction." · The judgment does not identify any property in language other than that above set out, nor do the findings specify the property in any different manner.

The appellant relies largely upon its contention that the contract provision relating to the "improvements" becoming the property of the plaintiff upon default of defendant, if construed to include machinery and tools, is such an unconscionable and grossly oppressive provision, when viewed in the light of the facts of record, that a court of equity should refuse to enforce it. However, it is our opinion that the judgment of the trial court is not dependent upon the terms of the contract, but that the judgment must be affirmed because of the statutory provisions to which we hereinafter refer.

SDC 51.0102 defines real property as land, that which is affixed to land or that which is incidental or appur-

tentant to land. SDC 51.0105 makes specific reference to mining properties; this section in part provides: "Sluice boxes, flumes, hose, pipes, railway tracks, cars blacksmith shops, mills, and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine." Construing this section of our code the court held in the case of Hardin v. Graham et al., 38 S. D. 57, 159 N. W. 895, 897, that "these things are considered to be real property." We are of the opinion, therefore, that independent of any provision of contract, the property described in the present judgment in language identical to that of SDC 51.0105, passed with the real property and became the property of the plaintiff unless there was an express or implied agreement between the parties permitting the removal of this property by the defendant. Killian v. Hubbard et al., 69 S. D., 289 9 N. W.2d 700, 146 A. L. R. 708. Whether a determination of the nonexistence of such an express or implied agreement is implicit in the judgment rendered by Judge Cash and res adjudicata, we do not decide, because we are convinced that the present record fails to show any such agreement and it follows that the present judgment must be, in either event, affirmed. The record is silent as to any express agreement, so the only question remaining is whether the facts are such as to imply an agreement permitting the removal of these items in the event of a failure by defendant to comply with the contract. The defendant was in possession of the property under an executory agreement or option to purchase, and had paid substantial amounts upon the purchase price. For all intents and purposes the defendant was in possession as the owner, and this property was placed upon the premises as it would be if placed there by the owner. Under these circumstances we find no basis for implying an agreement that it was intended the property should be used on the premises only temporarily. Nor do we believe that any implication arises from the fact that the parties provided in the contract that in the event of a default all the "improvements" would become the property of the plaintiff. It is at least as reasonable to

imply that this provision was intended as cumulative to the statute as it is to imply that it was intended the statute would have no application and only "improvements" as that term is used in the contract would pass with the realty in case of default. In this connection it should be stated, that the trial court found upon sufficient evidence that the term "improvements" as used in the contract described property coextensive with the property involved in this action. However, there is no basis in the record upon which it might be determined that this provision of the contract was intended to supplant the statute, or limit the property described in the statute as being deemed affixed to the mine to "improvements" as that term is used in the contract. We conclude, therefore, that the statute, SDC 51.0105, is controlling. The property described in the judgment as "all sluice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing the mine on said properties" must be deemed affixed to the mine, and real property as defined by SDC 51.0102.

The basis upon which we have placed this decision makes it apparent that no prejudice resulted to defendant from the visit to the mine by the trial judge.

The judgment appealed from is affirmed.

BECK, Circuit Judge, sitting for POLLEY, J.

All the Judges concur.